S. W. Austin *v.* The State.

(*Nashville.* December Term, 1916.)

1. ABORTION. Intent.

Under Shannon's Code, section 6464, penalizing persons who ad-
minister substances with the intention to procure a miscarriage,
etc., the intent is an essential element of the crime. (*Post, pp.*
470-472.)

Case cited and approved: Rex v. Phillips, 3 Campbell, 73.

Code cited and construed: Sec. 6464 (S.).

2. ABORTION. Sufficiency of evidence.

Evidence that accused induced a woman to take medicine given him
by physicians who advised him it would not cause a miscarriage
does not sustain a conviction for attempting to secure a mis-
carriage under Shannon's ·Code, section 6464, prohibiting ad-
ministering substances with intent to secure a miscarriage, etc.,
since the essential element of intent is not established. (*Post,*
*pp.* 470-472.)

---

FROM DE KALB

---

Appeal from the Circuit Court of De Kalb County.
—A. H. Roberts, Judge.

Adcock & Cooper, for appellant.

Wm. H. Swiggart, Jr., Assistant Attorney-General,
for the State.

Mr. Chief Justice Neil delivered the opinion of
the Court.

The plaintiff in error was indicted in the circuit
court of De Kalb county under chapter 140, section

2, Acts of 1883 (Shan. Code, section 6464), which reads:

"Every person who shall administer any substance with the intention to procure the miscarriage of a woman then being with child, or shall use or employ any instrument or other means with such intent, unless the same shall have been done with a view to preserve the life of such mother, shall be punished by imprisonment in the penitentiary not less than one nor more than three years."

He was charged with having attempted to procure the miscarriage of one Jessie Spencer Anderson, and was convicted and sentenced under the statute above quoted.

The facts shown in the record are that plaintiff in error had been criminally intimate with this woman, and, as the result, she became pregnant by him. When she discovered this situation, or thought this result had been produced, she told him about it, and asked him if he was going to marry her, as he had promised. He laughed, and said:

"Yes; but you may be mistaken. A good many things can be done for a case of that kind."

With the purpose of effecting a miscarriage he went to see one Dr. Clark, a young physician, his friend, residing in White county. When the matter was presented to the doctor, he energetically refused, saying that no amount of money could be offered sufficient to induce him to take such action. He told

plaintiff in error, however, that he could give him a medicine which would do the woman no harm if she was in fact pregnant, but if she was not pregnant, but merely irregular, would bring on her regular periods. The doctor says in his evidence:

"The defendant understood that if the woman was pregnant this medicine was harmless and would not injure her, nor cause an abortion, because I was careful to make this plain to him."

The plaintiff in error says he fully relied on this information, which means that he fully believed it.

The plaintiff in error gave Miss Anderson a bottle of this medicine, and she took it for a while, and, finding that it did not have the desired effect, ceased its further use.

She then told plaintiff in error that, if he did not do something to relieve her, she would kill herself; that she did not intend to live long enough for her condition to become perceptible to other people. He then went to another doctor, who told him that an abortion could not be thought of, because the consequences would be too serious, both criminally and morally. He told plaintiff in error, however, that he could procure some harmless tablets which would ease the woman's mind, and gradually she would get used to the situation, and nature would take its course. These tablets were secured, and she took them without any result, just as the doctor anticipated, and in course of time the child was born.

Under these facts we do not think it is possible to conclude that the plaintiff in error could have be-

lieved that either of the medicines used would produce a miscarriage; hence there is no sufficient proof of the intent. The rule is thus laid down in 1 Ruling Case Law, p. 73:

"When the statute punishes the administration of drugs or use of an instrument with the intent to produce an abortion, the criminal intent with which a substance is administered, or an instrument is used, is the important consideration in determining the guilt or innocence of the accused. If the intent to procure the abortion is proved, the person charged may be guilty, although the means employed by him are inadequate to produce the effect so intended; but if he knows their quality and that they have no tendency to cause an abortion, then the criminal intent cannot exist. He must believe they have such tendency to produce the desired result, otherwise it is impossible that his advice to the woman to take them should be with the intent thus to produce it."

See 66 Am. Dec., 84, 86, note; 1 Corpus Juris. p. 311, citing *Rex* v. *Phillips,* 3 Campbell, 73, in which case it was held that, unless the person using the agency charged believed that it would produce the result, that is, a miscarriage, there could be no intent to produce that result, and therefore the offense would not be complete. To same effect see 1 Bishop, Crim. Law, section 769, subsec. 4.

The result is the judgment must be reversed, and the court recommends to the Attorney-General the entry of a *nolle prosequi.*