## COMMONWEALTH *vs.* LUKE K. BLAIR.

Hampshire. Sept. 17. — Nov. 16, 1878. ENDICOTT & SOULE, JJ., absent.

On the trial of an indictment for procuring an abortion, there was evidence that cuts, wounds and bruises were found in the womb of the woman upon whom the operation was alleged to have been performed, indicating the forcible use of some instrument, and that the defendant had the opportunity to commit the crime. *Held*, that evidence that, five months before the time of the alleged operation, the defendant had in his possession an instrument which he described as well fitted to procure an abortion, was admissible.

The admission of additional evidence, offered by the government, after the defendant in a criminal case has put in his evidence, is not the subject of exception.

INDICTMENT in two counts. The first count, upon which alone the defendant was convicted, charged that the defendant, on December 5, 1876, at Pelham, "unlawfully and maliciously did thrust a certain instrument, the name of which is to the jurors aforesaid unknown, into the body and womb of one Mary M. Wilson, then and there being pregnant with child, with intent thereby then and there to cause the said Mary M. Wilson to miscarry and prematurely bring forth from her body the said child with which she was then and there pregnant."

At the trial in the Superior Court, before *Gardner*, J., the

government offered evidence tending to show that Mrs. Wilson had a miscarriage, at Pelham, on December 7, 1876, resulting in her death on December 16, 1876, and that, after death, cuts, wounds and bruises were found in her womb, caused by some instrument used therein with violence.

The government also offered evidence that the defendant, who resided in Holyoke, was, on December 5, 1876, taken to Pelham by the husband of Mrs. Wilson, and passed the night at the house of Wilson, returning to Holyoke on the next day; that he said to the officer, when arrested, that he did not think Wilson would have gone back on him; and that he attempted to escape trial by secretly going to Canada after a former trial.

The defendant testified that he was a practising physician and surgeon at Holyoke, denied that he procured any abortion on Mrs. Wilson, and explained the occasion of his visit to Pelham. Upon cross-examination, he was asked if he had not, at the time of the alleged offence, an instrument for procuring abortions, and he answered that he had never had any such. He was then asked if he did not have one at the time that a Mrs. Myrick was at his office in Holyoke, at a time prior to December 5, 1876, and he said that he never had any then or at any other time. The government, after the defendant's testimony was in, called Mrs. Myrick as a witness, and offered to show that, in July or August, 1876, the defendant had in his possession an instrument adapted to the purpose of procuring abortions, which instrument, the government contended, could have made the wounds found in the womb of Mrs. Wilson, and was evidence tending to show that the defendant had an instrument by means of which the wounds might have been caused at the time of the commission of the crime. The district attorney, on being asked, would not say that he omitted the testimony of the witness Myrick, when putting in the case of the government, unintentionally, but said he had been expecting to elicit the facts from the defendant on cross-examination. The defendant excepted to the admission of the testimony as unseasonable and incompetent; but the judge admitted the testimony, and the witness testified that she was at the defendant's house in Holyoke, in July or August, 1876, and saw a metallic instrument in the defendant's hands, in two parts, about a foot long, round and hollow, and that the defendant said

it was the best kind of instrument for procuring an abortion, because safer than another kind.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*W. G. Bassett*, for the defendant.

*C. R. Train*, Attorney General, for the Commonwealth.

AMES, J. The evidence objected to had a tendency to show that the defendant had in his possession, not long before the sickness and death of Mrs. Wilson, a metallic instrument which the jury might believe adapted to the use described in the indictment; and that he understood and described it as well adapted to such a use, and safer than other instruments that might be employed for such a purpose. Evidence had already been given for the purpose of showing the existence of cuts, wounds, and bruises in the womb of the deceased, such as indicated the forcible use of some instrument. All this, taken in connection with previous testimony, tended to show that the defendant had the opportunity, and was knowingly in possession of the means, of committing such a crime, and the evidence was therefore competent and admissible. Its weight and effect were of course to be judged of by the jury. *Commonwealth* v. *Brown*, 121 Mass. 69.

Its admission after the defendant had closed his case was a matter of judicial discretion, and not a subject of exception. *Commmonwealth* v. *Arrance*, 5 Allen, 517. See also *Foot* v. *Hunkins*, 98 Mass. 523.                    *Exceptions overruled.*