### Ida Clark *et al.*

#### *v.*

### The People of the State of Illinois.

*Opinion filed December 22, 1906.*

1. Murder—*person attempting abortion resulting in death of the woman is guilty of murder.* The proper construction of section 3 of division 1 of the Criminal Code makes any person guilty of murder who either procures an abortion or attempts to procure an abortion and the death of the woman results.

2. Criminal law—*when variances are regarded as material.* Variances in criminal cases are regarded as material only when they mislead the defendant in the making of his defense and expose him to the danger of being again put in jeopardy for the same offense.

3. INDICTMENT—*when indictment and proof are not materially variant.* An indictment charging murder of a pregnant woman by attempting to procure abortion by means of an instrument alleged to have been thrust into the "private parts and womb" of deceased, is not materially variant from proof that the instrument was thrust into the private parts and bladder of the deceased, where it penetrated the wall of the bladder, causing the mortal wound but leaving the womb untouched.

4. EVIDENCE—*when proof of mailing letter to defendant is admissible.* In a trial for murder, where death resulted from an attempt to procure an abortion, it is proper to show that the witness, a few days before the deceased left her home to visit the defendant, was given a sealed letter by the deceased addressed to the defendant, which the witness mailed.

5. SAME—*evidence that defendant made a business of procuring abortions is admissible.* On the trial of a person charged with causing the death of a woman as the result of an attempt to procure an abortion, it is competent, upon the question of intent, to permit witnesses to testify that at different times during several years prior to the crime charged, the defendant had solicited their patronage and held herself out as willing and able to produce abortions by means of instruments and medicines.

6. SAME—*what evidence is inadmissible as hearsay.* On the trial of a person for causing the death of a woman as the result of an attempt to procure an abortion, proof that the deceased, over a year before her death, exhibited to the witness an instrument which she asserted she had used to procure an abortion upon herself, saying she would do it again, if necessary, rather than have children, and testimony of a physician that he had treated the deceased at one time for the effects of an abortion and that she detailed to him how she brought it about upon herself, is hearsay and incompetent.

7. PRACTICE—*bill of exceptions should show, in the proper place, that objections were made.* The bill of exceptions should show, in the proper place, that objections were made to improper remarks of counsel and the court's ruling obtained thereon, and it is not commendable practice to preserve such objections only in that part of the record which sets out the points made on motion for new trial.

WRIT OF ERROR to the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

JEFFERSON ORR, EDWARD YATES, WILLIAM MUMFORD, and FRANK DULANEY, for plaintiffs in error.

W. H. STEAD, Attorney General, and MARK BRADBURN, State's Attorney, (WILLIAMS & WILLIAMS, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiffs in error were indicted by the grand jury of Pike county at the November term, 1905. The indictment contains four counts. The first charges, substantially, that the defendants, Ida and Henry Clark, feloniously and of their malice aforethought, with a certain instrument (name unknown) did make an assault on Pearl Holland, and did then and there attempt to procure a miscarriage by forcing and thrusting the said instrument into her body and womb, and in said attempt to produce the miscarriage caused the said Pearl Holland to instantly die, whereby the said Henry Clark and Ida Clark committed the crime of murder. The second count charges that the defendants, Ida and Henry Clark, by the use of an instrument (name unknown) forced and inserted into the private parts and womb of said Pearl Holland, did attempt to procure and produce a miscarriage, thereby inflicting upon her private parts and womb a mortal wound, and the said Henry Clark and Ida Clark then and there, by the means and in the manner aforesaid, did unlawfully, feloniously and willfully kill and slay the said Pearl Holland. Count 3 is substantially like count 2, and count 4 substantially like count 1. Plaintiffs in error were tried at the April term, 1906, of the Pike county circuit court, and both found guilty of murder and the punishment fixed at fourteen years in the penitentiary. The case was brought here on writ of error.

The sufficiency of the indictment is challenged, claiming it was based upon section 3 of division 1 of the Criminal Code, found in Hurd's Statutes of 1905, (p. 665,) which reads: "Whoever, by means of any instrument, medicine, drug or other means whatever, causes any woman, pregnant with child, to abort or miscarry, or attempts to procure or

produce an abortion or miscarriage, unless the same were done as necessary for the preservation of the mother's life, shall be imprisoned in the penitentiary not less than one year nor more than ten years; or if the death of the mother results *therefrom,* the person procuring or causing the abortion or miscarriage shall be guilty of murder." · ·

It is insisted that this statute does not provide that if the death of the mother results therefrom, the person *attempting* the abortion or miscarriage shall be guilty of murder, but only in case a person actually causes the abortion. The statute provides that it shall be murder if the death of the mother results *therefrom,*—that is to say, from causing or attempting to procure or produce the abortion. The word "therefrom" plainly refers to the two crimes mentioned in the first part of the section, and the person who would otherwise suffer imprisonment from one to ten years, shall, when death so results, be guilty of murder. The words, "the person procuring or causing the abortion or miscarriage," are obviously not intended to limit or qualify the first part of the section but refer in a shorter form to the person so designated, in order to specify thereafter the offense in case death results; otherwise the legislature would have committed the anomaly of enumerating two different divisions of the crime, namely, the completed abortion or miscarriage accompanied by death and the attempted abortion or miscarriage accompanied by death, and providing a penalty for but one. The meaning · contended for by plaintiffs in error is technical, and would not impress one as the natural and logical construction. The present section (enacted in 1874) is evidently the law of 1867 re-written and very slightly modified. Section 2 of the earlier act was as follows: "If any person shall, in the *attempt* to produce the miscarriage of a pregnant woman, thereby cause and produce the death of such woman, the person so offending shall be deemed guilty of murder, and shall be punished as the law requires for such offense." If the construction now contended for by plaintiffs in error be

the correct one, then under the former law a person who only attempted to produce a miscarriage and caused death could be held for murder, but if the miscarriage or abortion was complete he could not be so held. This court held in *Earll* v. *People,* 73 Ill. 329, in construing this section of the law of 1867, that a person might be held thereunder as guilty of murder for a completed abortion as well as for the attempt. In *Beasley* v. *People,* 89 Ill. 571, this court, in discussing section 3 of the present Criminal Code, said (p. 576) : "That clause of the statute under which the indictment was found makes it a crime of a high grade, and if the death of the mother ensues, it is murder for anyone, 'by means of any instrument, medicine, drug or other means whatever, to cause any woman pregnant with child to abort or miscarry, or attempt to produce an abortion or miscarriage, unless the same were done as necessary for the preservation of the mother's life.'" In *Earll* v. *People,* 99 Ill. 123, the indictment charged the defendant with murder in attempting to produce an abortion, and while the jury acquitted of the charge of murder a conviction was found under that indictment for an assault with intent to produce an abortion, and no question was raised that the indictment was not drawn in proper form charging murder. In *Howard* v. *People,* 185 Ill. 552, the indictment charged a completed abortion and murder resulting therefrom. In considering and comparing the present statute with the statute of 1867 it is said (p. 562) : "We regard the language of the present statute as substantially the same as that of the former." Clearly, from these decisions this court, as well as the legal profession, has construed this section, as did the trial court in this case, to mean that when death resulted either from an abortion or an attempt to produce an abortion the person responsible should be held guilty of murder. We believe that to be the fair and reasonable construction.

We are also of the opinion that under the last part of section 145 of the Criminal Code, (Hurd's Stat. 1905, p. 703,)

which reads, "that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder," the plaintiffs in error, under this indictment, could be held for murder.

It is urged that there is variance between the allegations in the indictment and the proof. Deceased had been pregnant with child and an abortion had been attempted upon her. The post-mortem examination by a physician disclosed a rent through the wall of her bladder one-third to one-half inch in diameter, caused by some instrument having been passed through the lips of the private parts along the urethra and into the bladder. Death resulted from shock or peritonitis, or both, caused by this injury. The physician who made the post-mortem examination testified that in his judgment the injury was done with a blunt instrument. On opening the womb he found a fœtus of from four to five months gestation, and did not discover any injury done either to the womb or fœtus. Some of the counts of the indictment charge the instrument to have been thrust into the "body and womb" and other counts into the "private parts and womb" of said Pearl Holland, and it is insisted that there is fatal variance, in that the proof shows that the instrument was not thrust into the womb, but into the bladder. The testimony in the case shows that the womb in a normal female lies above and back of the bladder and is connected with the bladder for about an inch just above the neck of the womb. The urethra is a duct leading out of the bladder, to empty it. The vagina is a canal leading to the womb, and is back of the urethra. It is about an inch from the outer edge of the private parts to the opening of the urethra and about the same distance to the opening of the vagina. The urethra starts from the vagina and leads to the bladder. The same lips are around the vagina and urethra.

From the outer edge of the private parts to the neck of the womb is from three to four inches. From the outer edge of the private parts to where the bladder begins is about two inches.

In *Guedel* v. *People,* 43 Ill. 226, in discussing the doctrine of variance, this court said (p. 229) : "It has its origin in that tenderness of the law for human life which requires that a prisoner on trial for murder shall be fully informed by the indictment of the precise nature of the charge he is called to meet." Further along, on the same page, it is said: "The mode in which the killing was accomplished is an essential part of the indictment, and if two indictments allege modes of killing so substantially unlike that the evidence necessary to sustain the one would not be admissible under the other, then they are not indictments for the same offense, in a legal sense, although they may relate to the homicide of the same person." As a general rule, it is sufficient to prove the acts charged in the indictment or information which are the constituent elements of the offense. If this be done, failure to prove facts alleged which are not of the substance of the offense is immaterial. Variances are regarded material, in criminal cases, when they mislead the defendant in making his defense and expose him to the danger of being again put in jeopardy for the same offense. (*22* Ency. of Pl. & Pr. p. 551, and cases there cited.) To sustain the plea of jeopardy the offenses must be identical. If the offenses are so distinct that the evidence in the one case will not support the other, then they are not identical. This court discussed the principle involved herein and reviewed the authorities at length in *Spears* v. *People,* 220 Ill. 72.

It is evident that the information demanded by the indictment does not require it to be given with technical minuteness, but only with that reasonable accuracy and clearness of statement which will apprise the defendant of what he is charged. Apart from technical distinctions, we apprehend that the term "private parts" sufficiently describes the female

organ of genitation and its immediate vicinity, not only for that particular and limited portion anatomically known as the womb, but for the vagina, the urethra and lips of the womb. The averment the instrument inserted through the lips of the private parts entered the urethra and pierced the bladder instead of passing up the vagina and into the womb did not in any way mislead the plaintiffs in error. This court decided in *Baker* v. *People,* 105 Ill. 452, that an indictment was sufficient which charged that the instrument was thrust or inserted "into the private parts." That construction has been upheld in later decisions. If the words in the second and third counts, "and womb," after the words "private parts," be stricken out, the indictment, under the decision just quoted, would be good. Wharton on Criminal Evidence (8th ed. sec. 138,) states: "All unnecessary words may, on trial or arrest of judgment, be rejected as surplusage if the indictment would be good upon striking them out." In an opinion written by Justice Story, the United States Supreme Court held in *United States* v. *Howard,* 3 Sumner, 12, that mere surplusage will not vitiate an indictment and need not be established in proof. (*State* v. *Bailey,* 31 N. H.—11 Fost.—521.) Manifestly, under these authorities there is no variance on this point between the proof and the second and third counts of the indictment, and if there be any count in the indictment upon which the conviction can be properly based, the judgment should not be disturbed although other counts be held bad. (*Howard* v. *People, supra.*) If this indictment were held insufficient on the ground that the proof varied from the allegations, and another indictment were drawn charging the death of Pearl Holland in attempting to commit an abortion by thrusting an instrument into her private parts and bladder, the same proof would have to be offered to sustain that indictment as was offered to sustain this. While, as was said in *Baker* v. *People, supra,* the indictment might have been drawn with more technical accuracy, yet it is substantially good, and

224—36

there was no variance amounting to error between the allegations and proof.

Serious complaint, is made that Bertha Badgely, a girl of fifteen, was allowed to testify that the deceased, on May 11, 1905, gave her a sealed letter bearing the address, "Mrs. Ida Clark, Ilasco, Missouri," which the witness mailed. No testimony as to the contents of the letter, or anything said by the deceased concerning it, was admitted. It is insisted that the writing on the envelope was hearsay. We do not agree with this contention. If, instead of mailing this letter, the witness had taken it by the direction of the deceased and delivered it to the plaintiff in error Mrs. Ida Clark, or to some one else who testified that she delivered it to Ida Clark, such testimony would plainly have been admissible as bearing on the question of an arrangement between the deceased and plaintiff in error. Instead of delivering it to another person Bertha Badgely mailed the letter, and thereby the presumption arises that plaintiff in error Mrs. Ida Clark received it. If a letter is put into the post-office, that is *prima facie* proof, until the contrary appears, that the party to whom it is addressed received it in due course. (2 Best on Evidence, sec. 403; Underhill on Evidence, sec. 230; Wharton on Crim. Evidence,—8th ed.—sec. 837; *Ashley Wire Co.* v. *Illinois Steel Co.* 164 Ill. 149; 22 Am. & Eng. Ency. of Law,—2d ed.—p. 1252, and cases there cited.) Mrs. Clark did not attempt to deny that she received the letter. Evidence to convict of a crime such as here charged, in the absence of the testimony of the victim, is almost always circumstantial, and hence the question of the admissibility of collateral facts in evidence is often to be determined by the nature of each case. (1 Am. & Eng. Ency. of Law,—2d ed. —p. 195.) We think the testimony of the mailing of this letter competent and material to the issues. There was no error in admitting it.

Complaint is also made of the admission of the testimony of five or six women that at different times, during several

years preceding the date of this alleged offense, plaintiff in error Ida Clark solicited patronage, and held herself out as being able and willing to commit abortion or produce miscarriage by means of instruments and medicines. On a trial for an offense such as charged in this indictment, intent is an essential ingredient, and it is competent to show the declarations of one on trial for procuring an abortion, to the effect that she was in the habit of performing or had solicited such work. Wharton on Crim. Evidence, (8th ed.) sec. 46, and cases there cited; *Commonwealth* v. *Blair,* 126 Mass. 40; *People* v. *Sessions,* 58 Mich. 594; *People* v. *Abbott,* 116 id. 263.

It is insisted that though the evidence might be admissible as against the plaintiff in error Ida Clark, it was not admissible against plaintiff in error Henry Clark. People's instruction 30, given by the court, limited this testimony to plaintiff in error Ida Clark. There is testimony by one Frederick, and not denied by Henry Clark, that the latter stated, "If your wife will listen to Ida you folks won't have any more children." This tends strongly to show that he knew the occupation of his wife and was soliciting trade.

In this connection it may be noted that plaintiffs in error complain of the refusal of their instructions numbered 9 and 15. We do not think there was any error in their refusal, as the court, by instruction 47 given for defendants and instruction 30 given for the People, fairly covered all the points raised by refused instructions 9 and 15.

Anna Rupert, a witness for defendants, testified that the deceased displayed to her a wire about six inches long, the size of an ordinary broom wire, some time in the early part of 1904, and that deceased asserted at the same time that she had committed upon herself, with that wire, an abortion, and that she would repeat it if necessary; that she would die before she would have children. The People produced witnesses who swore that the general reputation of the witness, Anna Rupert, was bad. After the closing arguments

were begun, defendants offered witnesses to prove that the general reputation of Anna Rupert was good. The court refused to allow the testimony to be offered at that time, and it is urged that this is reversible error. Such declarations of the deceased, made over a year before her death, could not by any method of reasoning be held to constitute a part of the *res gestæ*. Under the authority of *Siebert* v. *People,* 143 Ill. 571, and *Howard* v. *People, supra,* we consider such declarations by the deceased mere hearsay and the court should not have admitted them, hence it cannot be urged that the court erred in refusing to allow the character witnesses to testify, even if they were offered in apt time. The defense also offered to prove by Dr. Beavers, a practicing physician of Barry, Illinois, that on or about September, 1903, he treated the deceased, Pearl Holland, for the after-effects of abortion, and that in his examination the deceased detailed to him the manner in which her illness was brought about by herself. These declarations, under the authorities referred to, were hearsay, and not admissible.

Much complaint is made as to errors committed by the trial court in giving and refusing instructions. Most of the errors complained of are fully answered in the discussion with reference to the sufficiency of the indictment, the matter of variance between the allegations in the indictment and the proof offered, and the admissibility and exclusion of testimony. The only other question raised as to the refusal of instructions that deserves further notice relates to refused instructions 19 and 21. Both of these instructions singled out and called attention to particular facts. This court has repeatedly held that such an instruction is improper. (*Hoge* v. *People,* 117 Ill. 35; *Hartshorn* v. *Byrne,* 147 id. 418.) Thirty-three instructions were given for the People and sixty for the defendants. The jury were fully and fairly instructed as to the law and the evidence.

Complaint is made of statements of prosecuting attorneys during the trial of the case, both in the opening and

closing arguments. The bill of exceptions does not show in the proper place, at the time these statements are alleged to have been made, that objections were offered and a ruling obtained from the court. So far as the record discloses, objections were first made on a motion for new trial, and in support of that motion, under the heading, "The court certifies that the following remarks of the State's Att'y and assistant State's Att'y were made, as follows," then stating briefly what the remarks were to which objections were made. We are not satisfied from the record whether the trial judge intends to certify that these statements made in the motion for new trial are in accordance with the facts. The practice of preserving such objections only in that part of the record which sets out the points made on the motion for new trial, as done here, is not to be commended. It is very hard to understand in the brief abstract in the record their full import. Giving the most favorable construction possible to the contention of plaintiffs in error, in the way that these questions have been raised, the remarks complained of, while they may be objectionable, are not sufficient, in themselves, to reverse the case. *Earll* v. *People,* 99 Ill. 123; *Mayes* v. *People,* 106 id. 306.

We do not think the court committed prejudicial error in permitting counsel to assist the State's attorney.

Lastly, it is most vigorously and earnestly urged that the evidence in this case does not justify the verdict; that under the proof there is much more reason to believe that the injury to Pearl Holland was inflicted by herself than by the plaintiffs in error. Henry and Ida Clark had lived all their lives in and about Hannibal and Ilasco, Missouri. Henry Clark had been twice convicted of felony, the last time under the Habitual Criminal act. Ida Clark had been twice married previous to her marriage to Clark. Both husbands are still living. In the early part of 1905, and shortly before the death of Pearl Holland, plaintiffs in error moved their houseboat over to an island near the Illinois shore, in the

Mississippi river, opposite to Ilasco, Missouri. The island is subject to frequent inundations, heavily wooded and very little suited to cultivation, although the evidence tends to show that something like an acre near where the houseboat was located was previously prepared for cultivation, and the plaintiffs in error claimed that they intended to make a garden on this land as soon as the June freshets were over, in 1905. They had on the island a sow with a few pigs, and there is evidence that they were talking of taking some more swine and some goats onto the island later on. The houseboat contained only one room. The evidence shows that Pearl Holland had known Ida Clark some time previous to her death. The deceased girl had been living with her father in Barry, Illinois, for about three weeks previous. On Thursday, May 11, Bertha Badgely received and mailed a letter from her which was addressed to Mrs. Ida Clark, Ilasco, Missouri. On Saturday forenoon, May 13, deceased left on the train going west to Hannibal, Missouri. On the same day she arrived at Ilasco, Missouri, about 2:30 in the afternoon, and was met at the station by the plaintiff in error Ida Clark, who, in greeting, kissed her. She walked with Ida Clark to the river, where the husband, Henry Clark, was waiting in a skiff. She went that Saturday afternoon with the plaintiffs in error to their houseboat on the island, and on Tuesday, May 16, 1905, died there. The testimony of the plaintiffs in error is, that on Tuesday Henry Clark was fishing, leaving his wife and the deceased at the houseboat; that the two latter walked out onto the island for the purpose of gathering greens; that on their way back to the houseboat they passed the point where Clark was fishing and the wife stopped for a brief conversation with him, the deceased going on alone to the houseboat; that some thirty minutes later Mrs. Clark went to the houseboat and found Pearl Holland lying on the bed with a bottle of medicine of some kind near her and apparently in a dying condition; that her shoes were off, but otherwise she was dressed as

when she came to the island; that her hair was down and much disheveled; that Ida Clark attempted to place her in a more comfortable position and immediately ran to call her husband, but that deceased died before they could reach the boat; that Henry Clark went at once to Ilasco to call the family of the deceased and the public officials, but finding the wires would not work he went to Hannibal and sent notice to the sheriff of Pike county, Illinois.

Pearl Holland's condition of pregnancy had been brought about in such a way as would tempt her to seek just such services as the testimony tends to show Ida Clark was engaged in performing. She came to the town nearest the island and was carried by the plaintiffs in error to their one-room habitation. An instrument was inserted in the private parts of deceased. Instead of entering the womb and releasing the fœtus, it passed along the urethra and punctured the wall of the bladder. It is difficult to imagine a person who could deliberately, of herself, press a blunt instrument through the urethra and against the bladder until it forced its way through the tough muscles of that organ, with all the pain such a procedure would give. Such a thing might easily be done by another party, who would not feel the pain. The uncontroverted testimony of the physician who made the post-mortem examination is that death ensued probably not less than twelve, and perhaps as much as twenty-four hours, after the injury was inflicted. Is it probable that if deceased had inflicted this wound upon herself she would have had the physical strength or the forethought to conceal or destroy the instrument which had been used? A most thorough and careful search, by the officials, of the houseboat for the instrument was made, with no results. The testimony shows that deceased took with her a package of letters when she left Barry to go to Ilasco. These letters were not found. Is it reasonable to suppose that deceased would have gone to this island for the purpose of committing an abortion upon herself without telling Ida Clark? According to the story

of plaintiffs in error deceased must not only have intended to commit this abortion upon herself, but also have planned not to allow either of plaintiffs in error to know anything about it. This is the only reason that can be offered for the deceased disposing of the instrument with which it is claimed she inflicted the fatal wound upon herself, and if she did this, why should she destroy the letters that she took with her? If she had committed this injury upon herself, her resolution to conceal it from the only human beings within call could scarcely have held out for twelve hours against the terrible pain of a mortal injury. She would have called for help, and if she did, why was not help summoned? Why did plaintiffs in error wait until the morning of the following day before summoning the farmers from the near-by mainland? When the authorities were removing the body to Hannibal for a post-mortem examination, Ida Clark turned to the mother of the dead girl, without any suggestion of her guilt having been made, threw her arms around the mother's neck and said, "Maggie, if they arrest me for this you be my friend." Except the fact that the deceased's hair was badly matted there was no evidence in the houseboat of the terrible struggle through which she must have gone before death ensued. There were practically no stains upon her or upon the floor, or anything about the houseboat to indicate how or when the injury had been inflicted. The great weight of the testimony in this record is inconsistent with the theory that Pearl Holland committed this crime upon herself. If she did not, then plaintiffs in error must have committed the crime. All of the circumstances tend to uphold their guilt. In our opinion the verdict is justified by the evidence.

The judgment of the circuit court of Pike county will be affirmed.

*Judgment affirmed.*