## STATE *vs.* RALPH I. DURKEE.

### JUNE 3, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. The defendant was found guilty of committing a criminal abortion resulting in death. His motion for a new trial was heard and denied. The case is before us on the defendant's exception to the denial of that motion and on certain other exceptions taken by him during the trial.

It would serve no useful purpose to refer specifically to the testimony in the case, all of which we have carefully read and considered. In general terms, the testimony for the state is that the defendant performed a certain act upon the deceased for the purpose of procuring an abortion, which

act resulted in her death. The testimony for the defendant is of a two-fold character. First, the defendant testified that he refused to perform an abortion and that he did nothing to bring about such result, although he admitted assisting the deceased in taking some "external" treatment for a condition which he described. Secondly, he also testified that the deceased told him that an abortion had been performed upon her by an unnamed person before she unexpectedly came to his house with a male companion. It is clear from defendant's testimony that the deceased, whom he did not previously know, remained in his home for two days following the commission of the alleged act, and that during this time he called a doctor to attend her.

The defendant was thirty-nine years old at the time of the trial and was not a physician. In his late youth or early manhood he lost part of his right arm in an accident. For many years prior to the alleged offense, March 26, 1938, he had worn an artificial arm and hand which gave him some degree of manipulation. The defendant strongly urges this handicap as a controlling reason for the conclusion that he was physically unable to perform an abortion. The weakness of defendant's contention rests in the fact that his physical handicap was not only apparent to the jury but was directly called to their attention when he was asked by his own counsel to demonstrate "the motions" of his "arm" when he assisted the deceased in the administration of the "external" treatment which we have hereinbefore mentioned.

The defendant took no exception to the charge as given, nor did he ask for any specific instructions. After a fair charge, the jury, who had seen the witnesses and heard them testify, found the defendant guilty upon conflicting evidence. The trial justice, who had the same opportunity of hearing and observing the witnesses, approved the verdict of the jury. In his decision denying the motion for a new trial he expresses the opinion that the "verdict was based upon the evidence, a verdict that the jurors could

properly find from the evidence that was produced." As we are denied the benefit that comes from seeing the witnesses and hearing them testify, we cannot say that the trial justice was clearly wrong in denying defendant's motion for a new trial. The exception to such decision, which is defendant's first exception, is overruled.

The fourth exception is to the refusal of the trial justice to strike from the record the statement by a witness that what he was saying was "the complete truth and nothing but the truth." While we agree with the defendant that a witness should testify without comment, we fail to see how the defendant could have been prejudiced by the ruling in question. He merely repeated what his oath required him to do. The exception is overruled.

Under exceptions 5 and 6, defendant contends that it was error to admit in evidence a statement, consisting of questions and answers, which he made to the police. This statement was taken in shorthand and then typewritten. It was signed and sworn to by the defendant as the truth, of his "own free will without any threats or promises on the part of the police." Both the shorthand notes and the signed statement were produced in court by the state.

The statement may be divided into two parts. One part consists of admissions in the nature of a confession directly connecting the defendant with the offense for which he was on trial. The other part consists of admissions by him that on several prior occasions he had performed abortions on other women. Following a preliminary examination into the circumstances under which the statement was made and signed, the entire statement was admitted in evidence as the voluntary act of the defendant.

In such preliminary examination the defendant was given the opportunity to cross-examine the police clerk through whom the statement was offered in evidence. He availed himself of this opportunity, but he did not ask that he be allowed to cross-examine the police officers who questioned him in connection with this statement, nor did he request

that he, himself, be permitted to testify concerning the taking of such statement. *State* v. *Jacques,* 30 R. I. 578, 585.

We find nothing in the record before us, up to the time that the defendant's signed statement was admitted in evidence, even tending to show that such statement was not his voluntary act. However, he did claim later, while testifying in his own behalf, that he made the statement out of consideration for his wife, who was ill in Boston, following the threat by a police detective to bring his wife back to Providence "if I didn't come clean and tell him that I was the one that done the job." In rebuttal, the detective denied making any such threat, and there is some evidence to the effect that the wife was in Providence at that time, although not at the defendant's home while the deceased was there. The wife died before the trial of the instant case.

It is well established by decisions of this court that admissions by an accused, not amounting to a confession but from which an inference of guilt may reasonably be drawn, are admissible in evidence, if such admissions are voluntarily made. *State* v. *Mariano,* 37 R. I. 168, 183; *State* v. *Nagle,* 25 R. I. 105. See *State* v. *Mowry,* 21 R. I. 376. In the circumstances of this case and in the absence of a motion by the defendant to strike from the record any and all reference to his signed statement after he had testified, it became a pure question of fact for the jury to determine whether the statement was voluntary or the result of any threat. The jury were properly instructed respecting this matter and no exception to the charge was taken by the defendant on this point.

This being so, it is clear to us that, upon the above-cited authorities, the defendant's admissions directly connecting him with the act in the instant case were properly admitted in evidence against him. But the defendant contends further that: "Even if the confession, so called, were admissible in evidence", his admissions with reference to former criminal abortions on other women were improperly

included in the statement and should not have been read to the jury. This contention is without merit.

The general rule that in a criminal case the defendant's guilt cannot be established by evidence showing the commission of other similar offenses by him is not without exception. One exception to such rule is that proof of similar offenses is admissible where the question of intent is involved. *State* v. *Colangelo,* 55 R. I. 170, and cases cited.

The indictment in the instant case is brought under general laws 1938, chapter 606, § 22, which requires that the prohibited act be done "with intent" to procure the miscarriage of any pregnant woman. It is obvious that intent is an essential element of the offense. In order to convict, the state must prove that the alleged act was performed by the defendant with the specific intent to procure a miscarriage. The overwhelming weight of authority is that in such circumstances proof of former criminal abortions by the defendant is competent evidence bearing upon his intent in the case on trial. *State* v. *Rowley,* 197 Iowa 977; *People* v. *Hobbs,* 297 Ill. 399.

If proof of former criminal abortions by the defendant is proper, are his admissions of such acts pertinent evidence against him to prove intent? We find no difficulty in answering this question in the affirmative, provided the admissions are not the result of any threat but voluntarily made.

In *Clark* v. *People,* 224 Ill. 554, the defendant was charged with having performed a criminal abortion. At the trial, testimony from some five witnesses was admitted in evidence that, at different times during several years preceding the date of the offense charged in the indictment, the defendant solicited patronage and held herself out as being able and willing to commit abortions. In considering the question of defendant's intent, which was a material element of the offense with which the defendant was charged, the court in that case held that it was competent to show "the declarations" of one on trial for procuring an abortion

to the effect that the defendant "was in the habit of performing or had solicited such work." *Commonwealth* v. *Blair,* 126 Mass. 40; *People* v. *Abbott,* 116 Mich. 263; Wharton on Criminal Evidence, (8th ed.) § 46, and cases cited.

In the instant case, no one would know better than the defendant whether he had performed criminal abortions on other and former occasions. Admission by him of such acts, if found to have been voluntarily made, is strong evidence of the commission of those acts and bears upon defendant's intent to commit a similar act here. The fifth and sixth exceptions are therefore overruled.

The seventh exception brings in issue the admissibility of the answer that an inspector from the state board of health gave to a question by the state inquiring of him what the deceased said to the defendant when he was brought to her bedside at a hospital where she was confined. "Q. What did she say to him? A. All we do is see that each knew each other, and they said some word signifying they knew each other." On objection of the defendant, this answer was stricken by the trial justice, who informed the witness that he might relate what the deceased said but that he could not give his conclusion therefrom, as its meaning was for the jury to determine. The witness then stated to the trial justice that he "couldn't remember just exactly what was said." The state did not further press that particular question. The exception on this point is clearly without merit. It is overruled.

The eighth exception refers to the exclusion of defendant's hypothetical question to a medical witness for the state. This question assumed certain facts that were not in evidence at that time and therefore was properly excluded. *McDonald* v. *Rhode Island Co.,* 26 R. I. 467. This exception is overruled.

The defendant has expressly waived all other exceptions in his bill of exceptions.

*John H. Nolan,* Attorney General, *Raymond F. Henderson,* for State.

*John A. Bennett,* for defendant.