EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARGARITA GARCÍA GARAY, acusada y apelante.

Número 15944.
*Sometido:* 11 de abril de 1955. *Resuelto:* 14 de junio de 1955.

---

*Santos P. Amadeo,* abogado de la apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán* y *Ramón Olivo Nieves, Fiscal* y *Fiscal Especial, respectivamente del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

La apelante fué acusada conjuntamente con Amalia Ortiz Fuentes y Rosa Lydia Ortiz de infringir las secs. 1ra. y 2da. de la Ley núm. 136 de 1937 (Leyes de 1936–37, pág. 304) porque allá en o por los días 24 al 29 de noviembre de 1953, "las referidas acusadas, ilegal y voluntariamente y con intención criminal de hacer abortar a Berzaida Torres Reyes, mujer quien para la fecha antes indicada estaba embarazada, las acusadas Amalia Ortiz Fuentes y Rosa Lydia Ortiz, le indicaron, aconsejaron e indujeron a la referida Berzaida Torres Reyes a abortar y la acusada Margarita García Garay valiéndose de instrumentos médico-quirúrgicos y agentes mecánicos, le dilató las partes genitales, haciendo abortar a la referida Berzaida Torres Reyes, todo ello sin que tales actos de las antes mencionadas acusadas hubieren sido aconsejados o prescritos por algún médico debidamente autorizado a ejercer la medicina en Puerto Rico con el propósito terapéutico de conservar la salud o la vida a dicha Berzaida Torres Reyes."

El jurado que entendió en la causa rindió veredicto declarando a Margarita García Garay culpable del delito imputádole y a las otras co-acusadas no culpables. Apeló aquélla de la sentencia dictada en su contra y en su alegato imputa a la corte sentenciadora la comisión de dos errores.

Para una mejor comprensión de estos errores, a los cuales nos referiremos más adelante, precisa hacer un breve resumen de la prueba. La del Pueblo la resume correctamente

el fiscal de esta Corte, como sigue: "La prueba del ministerio fiscal estuvo encauzada a demostrar que para el mes de noviembre de 1953 Berzaida Torres Reyes, quien tenía como tres meses de estar embarazada de Adail Ortiz, vivía con éste en la casa de su mamá doña Amalia Ortiz y con su hermana Rosa Lydia Ortiz (T.E. págs. 16, 17, 18). Doña Amalia Ortiz Fuentes recibía $120 como dependencia de su hijo Adail que era soldado (T.E. pág. 20) y por temor a perder ese dinero tenían interés en que Berzaida no tuviere ese hijo y con el propósito de provocarle un aborto la llevaron a la casa de doña Margarita García Garay en Bayamón el 24 de noviembre de 1953. (T.E. pág. 21.) Allí doña Margarita le puso unas gomas y un tapón en sus partes. (T.E. pág. 22.) Berzaida regresó a Naranjito y fué enviada de nuevo por doña Amalia y por Rosa Lydia Ortiz a Bayamón el 27 de noviembre (T.E. pág. 25). Doña Margarita volvió a ponerle gomas y tapones y abortó (T.E. pág. 26). El 30 de noviembre de 1953 el Dr. Roque C. Nido la examinó y encontró que le habían provocado un aborto criminal (T.E. págs. 60, 61 y 62). Doña Margarita García Garay recibió $30 por su trabajo (T.E. pág. 27)."

La prueba de defensa consistió en dos declaraciones juradas de Berzaida Torres Reyes donde ésta hacía constar que ella misma se había provocado un aborto tomando un medicamento y por medio de unas inyecciones y que ella había sido obligada a declarar contra las acusadas y recibió amenazas del fiscal. También declaró el Lcdo. Fonfrías para refutar manifestaciones de Berzaida en relación con la forma en que ésta juró una declaración ante el Lcdo. Marrero Ledesma.

En su primer señalamiento de error la apelante alega que la corte sentenciadora "erró al permitir que la perjudicada Berzaida Torres Reyes declarara sobre otros alegados abortos efectuados por la acusada."

La corte permitió, con la objeción de la defensa, que la perjudicada Berzaida Torres Reyes declarara que Rosa Lydia Ortiz le había dicho que ella se sacó dos muchachos con Marga-

rita García Garay y no le había pasado nada.(¹) La corte permitió también, con la objeción de la defensa, que esta misma testigo, mientras describía la habitación donde le provocaron el aborto, declarara que a otra joven que estaba allí al lado suyo, la apelante le provocó un aborto.(²)

En ocasiones anteriores hemos dicho que la regla general es al efecto de que en un proceso criminal el acusado no puede ser juzgado nada más que por el delito imputádole en la acu-

---

(¹) El incidente, según el récord, es como sigue:

"Fiscal:

"P. Explíqueles a las damas y a los caballeros del jurado cómo fué que las acusadas Amalia Ortiz Fuentes y Rosa Lydia Ortiz la trajeron a Ud. a casa de Margarita García Garay y para qué le trajeron a usted.

"R. Para que le pasaran los chavos del hijo que iba a tener yo.

"P. ¿A quién le pasarían los chavos?

"R. Al hijo de doña Amalia.

"P. ¿Qué era lo que ellas querían con usted?

"R. Que me sacara el muchacho que iba a tener yo.

"P. ¿Qué más le dijo, si le dijo algo a usted, Rosa Lydia Ortiz?

"R. Ella me dijo que ella se había sacado y que no le había pasado nada; que no me pasaba nada.

"P. ¿Quién le decía eso a usted?

"R. Rosa Lydia Ortiz, la segunda que está ahí sentada.

"P. Dígame Berzaida ¿con quién le dijo Rosa Lydia Ortiz que ella se había sacado esos dos muchachos?

"R. Con Margarita García Garay.

"Defensa: Objeción, señor Juez, y pedimos que se eliminen la pregunta y la contestación, porque aquí no estamos viendo ningún caso de ella . . . .

"La Corte: Está bien. Pero es parte de esta transacción, para ver cómo fué que la indujeron, si es verdad que la indujeron. Sin lugar.

"Defensa: Excepción, señor Juez.

"La Corte: Siga preguntando el fiscal.

"Hon. Fiscal: P. ¿Con quién le dijo a usted Rosa Lydia Ortiz que se había sacado los dos muchachos?

"R. Con Margarita García Garay.

"P. ¿Y Amalia Ortiz Fuentes, la otra acusada, que le decía a usted, si le decía algo?

"R. Ella me decía que me fuera a sacarme el muchacho, que eso no era nada.

"P. ¿Usted fué a la casa de la otra acusada, Margarita García Garay?

"R. Sí, señor, que ellas me llevaron."

(²) Su declaración a este respecto, fué como sigue:

"P. ¿Cuando usted estaba en ese cuarto, usted estaba sola o estaba acompañada?

sación y que, por tanto, no es admisible prueba de otros delitos independientes cometidos por el acusado; pero que por excepción, evidencia sobre otros delitos distintos es admisible cuando el delito anterior es un hecho material para establecer la comisión del crimen imputado o cuando el mismo forma parte del *res gestae*, o cuando se presente dicha prueba para demostrar motivo, intención, premeditación, malicia o un plan común, o cuando ambos delitos formen parte de una misma transacción. *Pueblo* v. *Juarbe*, 43 D.P.R. 448; *Pueblo* v. *Pérez*, 47 D.P.R. 765; *Pueblo* v. *Rodríguez*, 66 D.P.R. 317; *Pueblo* v. *Román*, 70 D.P.R. 50; *Pueblo* v. *Archeval*, 74 D.P.R. 512.

No hay conflicto sustancial en la jurisprudencia ni discrepancia de criterio entre los tratadistas en cuanto a que la evidencia de otros delitos similares cometidos por el acusado es pertinente para probar la intención criminal en los casos de aborto, y por tanto, admisible. A pesar de ser ésta la regla general, las decisiones discrepan en su aplicación. La doctrina expuesta en una línea de casos sostiene que cuando la *intención* es un ingrediente necesario del delito imputado y el Estado debe probarla, evidencia sobre otros abortos o tentativas para practicar abortos es admisible porque dicha evidencia es pertinente al punto en disputa (intención criminal) como parte del caso principal del Estado. *State* v. *Sturchio*, 130 N.J.L. 259, 32 A.2d 577; *Clark* v. *People*, 224 Ill. 554, 79 N.E. 941; *Commonwealth* v. *Blair*, 126 Mass. 40;

---

"R. Acompañada.

"P. ¿Acompañada de quién?

"R. Con otra muchacha al lado mío que estaba allí.

"P. ¿Usted observó lo que le estaba haciendo a esa otra muchacha?

"Defensa: Objeción, señor Juez.

"Que no conteste.

" . . . . . . .

" . . . . . . .

"La Corte: La Corte, en vista de lo que aparece en la obra Wharton *Criminal Evidence*, volumen 1, pág. 199, admite la prueba.

"Defensa: Con nuestra excepción, muy respetuosamente, señor Juez.

"Hon. Fiscal.

"P. ¿Usted observó lo que le estaba pasando a esa otra mujer que

*State* v. *Fay,* 21 A.2d 607;. *People* v. *Hobbs,* 130 N.E. 779; *State* v. *Rowley* 195 N.W. 881 (Iowa) ; *Max* v. *People,* 240 Pac. 697 (Col.) ; *Hightower* v. *State,* 158 P.2d 156 (Arizona) ; *State* v. *McCurtain,* 172 Pac. 481 (Utah) ; *State* v. *Newell,* 159 N.W. 829 (Minn.) ; *State* v. *Brown,* 85 Atl. 795 (Del.) ; *State* v. *Doty,* 208 N.W. 760 (Minn.) ; *State* v. *Steadman,* 59 S.E.2d 168 (S.C.) ; *People* v. *Richardson* 120 Pac. 20; *Wilson* v. *State,* 26 A.2d 770 (Maryland) ; *State* v. *Durkee,* 26 A.2d 604 (Rhode Island) ; *Smith* v. *State,* 175 P.2d 348 (Okl.). Véase además, 2 Wigmore *on Evidence,* sec. 359; 1 C.J.S., *Abortion,* pág. 336, sec. 28; 1 Am. Jur. *Abortion,* sec. 42.

Por otro lado, se ha sostenido que esta clase de evidencia es pertinente y material solamente cuando el acusado declara o en alguna otra forma indica que admite los hechos pero niega que los cometiera con intención criminal, aduciendo alguna otra excusa o justificación para su comisión. *People* v. *Darby,* 148 P.2d 28; *State* v. *Cragun,* 38 P.2d 1071 (Utah) ; *People* v. *Seaman,* 65 N.W. 203 (Mich.) ; *People* v. *Hickoks,* 204 Pac. 555 (Cal.) ; *Clark* v. *Commonwealth,*

---

estaba al lado suyo?

"Defensa: Señor Juez, que se entienda objetado todo este interrogatorio y se entienda anotada la excepción a la vez.

"La Corte: Adelante.

"P. Contésteme la pregunta.

"R. Estaba la otra muchacha igual que yo haciéndole ella un aborto.

"P. ¿Quién atendía a esa otra joven?

"R. Doña Margarita García Garay.

"P. ¿Usted veía lo que le hacía doña Margarita García Garay a esa otra joven que estaba al lado suyo?

"R. Sí, lo mismo que ella me hizo a mí.

. . . . . . .

"P. ¿Ella gritaba al igual que usted?

"R. Ella se quejaba.

"P. ¿Y doña Margarita estaba allí presente cuando ella se quejaba?.

"R. Sí, señor.

"P. ¿Y qué decía ella?

"R. Que se sentía algo adentro, eso fué después que ella había abortado.

"P. ¿Y que le decía doña Margarita a ella?

"R. Que se sentara en una escupidera por si acaso tenía algo adentro que lo botara y se pasó la noche así."

63 S.W. 740 (Ky.); *State* v. *Choate*, 46 S.E.2d 476 (N.C.); *Schneider* v. *People*, 199 P.2d 873; *State* v. *Gillis*, 59 P.2d 679; *People* v. *Lonsdale*, 81 N.W. 277; *People* v. *Spier*, 105 N.Y.S. 741; *State* v. *Wilson*, 233 Pac. 259; *Gray* v. *State*, 178 S.W. 337.

 La apelante fué acusada de infringir la Ley núm. 136 de 15 de mayo de 1937. Dicha Ley dispone:

"Sección 1.—Por la presente se prohibe, salvo indicación terapéutica hecha por médico debidamente autorizado a ejercer la medicina en Puerto Rico con vista a la conservación de la salud o vida, el indicar, aconsejar o inducir a abortar o practicar el aborto en una mujer embarazada.

"Sección 2.—Toda persona o personas que en violación de lo preceptuado en la sección 1 de esta Ley, proporcionare, facilitare, prescribiere, administrare por vía inyectable, oral, rectal o vaginal a una mujer embarazada, alguna droga, sustancia, agente medicamentoso, terapéutico u opotorápico, utilizare cualquier instrumento quirúrgico o agente mecánico, con la intención o propósito de provocarle aborto o le practicare el aborto, incurrirá en delito *felony*, . . . . ."

Las partes conceden que bajo este estatuto la intención criminal es un ingrediente necesario del delito imputado a la apelante. Ésta alega, sin embargo, que la evidencia de otros abortos admitida por la corte a quo no cae dentro de ninguna de las excepciones a la regla general que prohibe la admisión de esta clase de evidencia. Bajo la doctrina primeramente citada, evidencia de otros delitos similares cometidos por una persona acusada de violar la Ley 136, sería pertinente y material para establecer la intención criminal en el delito perseguido, siempre desde luego, que entre los otros delitos y el imputado en la acusación exista una relación razonable en cuanto a tiempo y lugar de su comisión. A pesar de ello, el testimonio de la perjudicada Berzaida Torres Reyes al efecto de que Rosa Lydia Ortiz le había dicho que ella se había sacado dos muchachos con Margarita García Garay, sería inadmisible por las razones que pasamos a exponer. Dicho testimonio no hace referencia a la fecha o fechas en que la ape-

lante practicara los dos abortos a Rosa Lydia Ortiz. Estas fechas podían ser tan remotas que los mencionados abortos no arrojaran luz alguna sobre la cuestión de la intención criminal envuelta en el delito por el cual se enjuiciaba a la apelante. Además, el susodicho testimonio no contiene elementos suficientes para establecer, aun prima facie, la comisión de otros delitos similares por la apelante. Por la sec. 1 de la Ley núm. 136 se prohibe, salvo indicación terapéutica hecha por médico debidamente autorizado a ejercer la medicina en Puerto Rico, con vista a la conservación de la salud y la vida, el indicar, aconsejar o inducir a abortar o practicar el aborto en una mujer embarazada. Por lo tanto, evidencia de que la acusada practicó dos abortos anteriores, no establece, sin más, la comisión de otros delitos. Ello es así, porque bajo esta ley para que la práctica de un aborto sea criminal es necesario que el aborto se practique bajo circunstancias no permitidas por el estatuto. Como el Pueblo no probó que la apelante había practicado anteriormente dos abortos criminales en Rosa Lydia Ortiz, el testimonio de la perjudicada sobre esos dos abortos no probaba ni ayudaba a probar la intención criminal en el delito por el cual estaba respondiendo. La misma regla que hemos venido discutiendo implica que los delitos similares independientes deben establecerse mediante evidencia competente antes de que se admitan con el propósito de probar la intención criminal en el delito por el cual se está procesando al acusado. *People* v. *Molineux*, 61 N.E. 286; *State* v. *Howard*, 183 Atl. 497; *Wrather* v. *State*, 169 S.W.2d 854; *State* v. *Porter*, 294 N.W. 898; *Weiss* v. *United States*, 122 F.2d 675; *People* v. *Gordon*, 71 Cal. App. 2d 606, 163 P.2d 110; *State* v. *Smith*, 194 Pac. 869; 2 Wigmore *on Evidence* (3rd. ed.), sec. 302.

Sin embargo, la admisión de tal evidencia no constituyó error en este caso. Dicha evidencia era claramente admisible contra la coacusada Rosa Lydia Ortiz. A ésta se le imputaba en la acusación, indicar, aconsejar e inducir a Berzaida Torres Reyes a abortar. Por lo tanto, las manifesta-

ciones hechas por esta coacusada a la perjudicada con el propósito de inducirla a abortar, eran relevantes al delito imputádole y por consiguiente, admisibles en evidencia contra ella. Bajo las circunstancias correspondía a la apelante solicitar del juez sentenciador una instrucción al jurado en el sentido de que no debían considerar dicha evidencia en contra de ella. A falta de tal solicitud, el dejar de trasmitir la indicada instrucción, no constituye error. *Alexander* v. *United States*, 95 F.2d 873; *Silkworth* v. *United States*, 10 F.2d 711; *Wilkes* v. *United States*, 80 F.2d 285; *Troutman* v. *United States*, 100 F.2d 628; *Reavis* v. *United States*, 106 F.2d 982; *Moore* v. *State*, 165 So. 596, 27 Ala. App. 43; *People* v. *Simeone*, 161 P.2d 369, 26 Cal. 2d 795; *People* v. *James*, 105 P.2d 947, 40 Cal. App. 2d 740; *Dauer* v. *United States*, 189 F.2d 343.

La doctrina en California es, en términos generales, al efecto de que cuando un acusado deja de solicitar de la corte una instrucción sobre determinado punto, no puede alegar como error la omisión de tal instrucción. *People* v. *Coronado*, 135 P.2d 647; *People* v. *Warren*, 104 P.2d 1024; *People* v. *Heddens*, 55 P.2d 230; *People* v. *Bill*, 35 P.2d 645; *People* v. *King*, 223 Pac. 1001; *People* v. *Martin*, 185 Pac. 1003; *People* v. *Scofield*, 265 Pac. 914.

La evidencia en cuanto al aborto que la apelante practicó a otra joven en la misma habitación y en el mismo momento en que practicara el aborto a la perjudicada Berzaida Torres Reyes era admisible por otras razones. Tal evidencia formaba parte del *res gestae* y por lo tanto, era admisible como excepción a la regla general que prohibe la admisión de prueba de otros delitos. *Pueblo* v. *Archeval*, supra; *Housman* v. *State*, 230 S.W.2d 541.

En su segundo y último señalamiento la apelante alega que la corte sentenciadora "erró al no instruir al jurado que debían tener cuidado al pesar el testimonio de la perjudicada, ya que a pesar que ella no era técnicamente un cómplice, sin embargo lo era en el sentido moral."

406

El error no fué cometido. La persona que se somete a una operación con el propósito de abortar, no es en derecho un cómplice. *People* v. *Stone*, 202 P.2d 333; *People* v. *Clapp*, 151 P.2d 237; *People* v. *Álvarez*, 166 P.2d 896; *People* v. *Young*, 75 N.E.2d 349; *Cahill* v. *State*, 178 P.2d 657; *Com.* v. *Sierakouski*, 35 A.2d 790; *State* v. *Montifoire*, 116 Atl. 77. El hecho de que se haya sometido a la operación voluntariamente, no altera la regla. *People* v. *Roades*, 209 P.2d 33; *People* v. *Miner*, 214 P.2d 557. Pero aún en los casos en que un testigo es un cómplice, una instrucción a esos efectos, aunque propia, no es necesaria. *Pine* v. *United States*, 135 F.2d 353, *cert. den.* 320 U. S. 740; *People* v. *Nathanson*, 59 N.E.2d 677; *Commonwealth* v. *Romito*, 70 A.2d 444; *State* v. *Simpson*, 236 P.2d 1077. Siendo ello así la apelante no puede quejarse de que la instrucción no fuera trasmitida al jurado, y menos aún cuando no la solicitió ante el tribunal sentenciador.

*Se confirma la sentencia apelada.*