HIGGINS, Justice.
 

 On May 15, 1941, the Grand Jury of St. Landry Parish returned thirty bills of indictment against the relator, charging him with the crime of embezzlement of public funds on various dates from 1937 to 1940, during the time he served in the capacity as sheriff and ex-officio tax collector of the Parish of St. Landry. A similar indictment was returned against him on July 10, 1941, by the Grand Jury, and, on October 17, 1941, he was likewise also charged with the crime of-embezzlement, in two informations • filed against him by 'the district attorney.
 

 In all of these cases, the defendant filed motions to have the district judge, Honorable Kenneth Boagni, recused, alleging that the judge had a> personal and pecuniary interest in them, because it was through his activities and efforts and those of his close associates, under. a plan or -scheme to gain greater political power by having him re-. moved from office, that the defendant was indicted by the Grand Jury; and that the district judge, as a party to the scheme and plan, “stacked and hand-picked” the Grand Jury by appointing on the Jury Commission persons who were hostile to the defendant and politically friendly with the judge, and by having members of the Grand Jury or their relatives given employment on state, parish and city jobs.
 

 The cases were cpnsolidated for the purpose of considering the motions to recuse and Judge Boagni appointed Judge Lester Bordelon of an adjoining district to hear and pass upon fhese motions. After a trial, Judge Bordelon decided that the accused failed to introduce sufficient evidence to show that there, was legal cause for the recusation of Judge Boagni and overruled the motions. Whereupon, the defendant duly notified the district attorney and Judge Bordelon of his intention to apply to this Court for writs of certiorari, prohibition and mandamus.
 

 We granted the writs, .under our supervisory jurisdiction, with a stay order. In response to the order of this Court, the entire record, as well as the returns of the district attorney and the district judge were filed here and the matter is now before us for review.
 

 The district attorney, in his return, asked this Court to rescind its action in ordering up the case because the writs were improvidently issued, citing Article 312 of the Code of Criminal Procedure, which provides:
 

 “No ruling of the court, before sentence, recusing or refusing to recuse shall be re
 
 *141
 
 viewable by any other court, either under its appellate or
 
 supervisory powers.”
 
 (Italics ours.)
 

 He also refers us to the case of State v. Davis, 154 La. 928, 936, 98 So. 422, wherein this Court stated that a defendant in a criminal prosecution for either a misdemeanor or a felony had no right to interrupt the trial by giving notice of his intention to apply to this Court to exercise its supervisory jurisdiction to compel the district judge either to recuse himself or to refer the question of recusation to a judge ad hoc, and that the remedy of the accused was to reserve a bill of exception to an adverse ruling, and, in the event of conviction and sentence, to appeal therefrom. It is argued that this authority has not been in any way modified or overruled.
 

 The relator pleads, the unconstitutionality of that part of Art. 312 of the Code of Criminal Procedure affecting the supervisory jurisdiction of this Court and cites the case of State v. Burris, 169 La. 520-536, 125 So. 580, 585. In that case, the defendant was indicted for murder and filed pleas of present insanity as well as insanity at the time of the commission of the alleged crime.
 

 Article 273 of the Code of Criminal Procedure provides:
 

 “No ruling of the court made on the trial of any plea of insanity shall, before sentence, be reviewable by any other court, either under its appellate or
 
 supervisory powers.”
 
 (Italics ours.)
 

 In concluding that certain provisions of the articles of the Code of Criminal Procedure dealing with pleas of insanity were constitutional, this Court, in State v. Burris, supra, said:
 

 “* * * In holding that they are constitutional, we must not be understood as holding that section 273 of the Code, which attempts to prohibit this court from reviewing, prior to sentence, a ruling of a district court, touching a plea of insanity,
 
 even under our supervisory jurisdiction,
 
 is constitutional. Pretermitting the question of the right to appeal, prior to sentence, our
 
 supervisory jurisdiction
 
 is vested in us by the Constitution, and we must look to that instrument to ascertain our right to exercise it.” (Italics ours.)
 

 It is clear that this Court has plenary power under Sections 2 and 10 of Article VII of the Constitution of 1921, granting it supervisory jurisdiction over all inferior courts and that these constitutional provisions must prevail over any provisions in a legislative act that conflict therewith. It is, therefore, apparent that this Court had the constitutional power and authority to issue the writs and, therefore, they were not improvidently granted.
 

 The record shows that in July 1939, Honorable Kenneth Boagni and Honorable Seth Lewis, attomeys-at-law residing in St. Landry Parish, together with their associates, organized the nonfactional political group known as the Voluntary Guardians of Clean Government, which was later converted into a factional political organization. The relator had been elected as the sheriff of St. Landry Parish for the term 1936-1940 and was a candidate to sue
 
 *142
 
 ceed himself in the first and second primary elections in January and February, 1940. L. Austin Fontenot and Isom Guillory were the district attorney and the district judge, respectively, at that time. Seth Lewis and Kenneth Boagni were declared elected to succeed L. Austin Fontenot and Isom J. Guillory as district attorney and district judge, respectively, on December 26, 1940. In thfe' primary elections of January and February, 1940, Boagni and Lewis and the members of the Voluntary Guardians of Clean Government endorsed and supported the persons running for public office opposed to the then parish and state administration officials and an overwhelming number of their candidates were successful in the elections.
 

 In his testimony, Judge Boagni stated that he was the organizer and the president of the Voluntary Guardians of Clean Government and that in the first and second primary election campaigns, he delivered addresses throughout the parish against the relator, who . was a candidate to succeed himself as sheriff, and the other affiliated public officials occupying parish and district offices; that he denounced them in speeches on the stump and in circulars, which he and his organization prepared and distributed, charging them with being guilty of graft, dishonesty and corruption; that as an attorney, he assisted Howard Strother in preparing an affidavit charging Judge Guillory, District Attorney Fontenot, and Sheriff Doucet with having failed to discharge the duties of their offices in not suppressing the operation of slot machines;' that as the president of the Voluntary Guardians of Clean Government, he wrote a letter to Attorney-General Leslie P. Gardiner requesting an investigation of the matter and that the Attorney-General supersede the district attorney and place the matter before the Grand Jury; that he appeared before the Grand Jury in connection with these charges and no true bills were returned; that later when Howard Strother was indicted by the Grand Jury for libel and slander and other offenses growing out of this situation, he acted as one of his attorneys in the trial of the case and filed a motion to recuse Judge Guillory on the ground that he was politically and personally hostile to Strother, because of the affidavit that he had filed against the judge; that Judge Guillory referred the motion of recusation to a judge of an adjoining district, who overruled it, and after the trial and the conviction of his client, he applied to the Supreme Court for writs of certiorari, prohibition and mandamus on the ground that the motion for recusation of Judge Guillory and the proof in support thereof showed that there were legal grounds for the recusation of the judge and’ that the district court had improperly and illegally overruled it; that while this matter was pending in the Supreme Court on writs, District Attorney Fontenot nol prossed the charges against Strother; that individually and as the president of the organization during these primary elections, he circularized pamphlets and had placed, in the newspapers, reproductions of affidavits made by several of the relator’s former deputy sheriffs in which they stated that the sheriff had presented them with checks for the sum of $300 each and had them endorse the checks, in order to draw
 
 *143
 
 money from the sheriff’s salary fund so that the sheriff could use this money in "his campaign; that they did not receive the funds which were supposed to be for back salary; that he conferred with attorney Seth Lewis, who drew up the affidavits and liad the former deputy sheriffs sign them; that most of the state and parish candidates supported by him and his organization were elected; that in May, 1940, he appeared before the committee of the 'State Legislature and advocated the passage of legislation to shorten the term of District Attorney Fontenot and District Judge Guillory, who had been appointed "by the preceding governors, and requiring elections for those offices; that Lewis and himself were unopposed as candidates for district attorney and district judge, respectively, and were later inducted into office; that because of complaints the Louisiana 'Crime Commission and the Supervisor of 'Public Accounts investigated the records •and accounts of the relator as sheriff and •ex-officio tax collector, the records and accounts of the assessor Lennie Savoy, and the records of the police jury of which Antoine J. Manouvrier was secretary, and, as a result of the investigations, Savoy and Manouvrier were indicted for embezzlement, and the relator was sued in a civil .action with his bondsman, in solido, for the sum of $25,616.70, and indicted by the Grand Jury and charged by the district attorney as hereinabove set forth; that a motion similar to the one filed here was also filed in the civil suit (No. 28,679 of the docket of the 27th Judicial District Court for the Parish of St. Landry), asking for liis recusation; that on September 15, 1940, in the civil suit, he voluntarily acceded to the motion to recuse himself and was about to appoint a judge to hear the case, when his attention was called by the defendant’s attorneys to the provisions of Act No. 124 of 1940, amending section 3 of Act No. 40 of 1880, giving a party who asked for the recusation of the district judge, the right to apply to the Supreme Court for the appointment of a judge when the district judge is recused, and making it the mandatory duty of this Court to make the appointment; that on October 8, 1940, he filed his written reasons for recusing himself voluntarily on the ground that the attorneys for the plaintiff had not opposed the motion for recusation, and stating that at that time, as well as now, he did not consider that the motion for his recusation set out allegations of fact which, if proved, would be legal grounds for his recusation; that the relator then applied to the Supreme Court for writs of certiorari, prohibition and mandamus, which application was opposed by the respondent district judge; and that the Supreme Court, on September 17, 1941, acting under the provisions of Act No. 124 of 1940, appointed Honorable C. Irjs Dupont, Judge of the District Court for the 18th Judicial District, with full authority to determine all issues in the case; that he thought at that time that the Supreme Court would order him to sit, because he could see no legal grounds for his recusation, and that he considered it his duty to sit no matter how unpleasant it would be to try the case; that he was ready and willing to give the defendant a fair trial; that he preferred not to sit as a judge in the case, because it would
 
 *144
 
 be very unpleasant and his position in the matter was predicated upon the fact that he had taken an oath to uphold the laws and to preside as a judge when it was his legal duty to do so; that it' made no difference to him who sat in the trial of the case; that he privately and publicly discussed on numerous occasions the violations of the law by the so-called “kick-back” to the sheriff of the money obtained by having the former deputy sheriffs endorse the checks drawn on the sheriff’s expense fund and that these are matters that constituted the basis for the indictments against the accused herein; that the Voluntary Guardians of Clean Government had a small newspaper called the Guardian Sheet, in which he had been instructed on a great many occasions to print various matters concerning the illegal and dishonest obtaining of money by the sheriff and other public officials; that he had discussed with Seth Lewis, now the district attorney, and one of the attorneys who had secured some of the affidavits against the defendant, the subject matter covered by them; that he had these affidavits printed in the New Era, a newspaper, of Eunice, La., on February 16, 1940, upon the instructions of the executive board of his organization; that he was and is one of the political leaders of the Parish and a member of the Voluntary Guardians of Clean Government, now a purely political factional organization, which was and is opposed to the defendant and his associates; and that he and his affiliates belong to the predominating political faction of the Parish. He stated that the charges in the motion for recusation that he tried to “stack and hand-, pick” the Grand Jury were not true.
 

 The motion for the recusation of the district judge in the civil case against the defendant and the record in connection therewith are expressly made a part of this record as well.as the motions for the recusation of the district judge in the case of State of Louisiana v. Savoy, 199 La. 305, 5 So.2d 903, and State of Louisiana v. Antoine J. Manouvrier, 199 La. 300, 5 So. 2d 901. This appears from both the motions for the recusation and the respondent judge’s returns filed in response to the rules issued by this Court therein.
 

 The jurisprudence of this State is well-settled that if the allegations of the petition for the recusation of a judge are mere general statements of conclusions that the judge is prejudiced and biased against or hostile to the defendant because of per-’ sonal or political reasons, or that if the petition does state facts which, if proved,, would not constitute a legal ground for recusation, the judge who is sought to be recused may himself overrule the motion and. need not refer it to another judge for trial. State v. Chantlain, 42 La.Ann. 718, 7 So. 669; State v. Blount, 124 La. 202, 50 So. 12; State v. Woods, 124 La. 738, 50 So. 671; State v. Hayes, 127 La. 762, 53 So. 983; City of Lafayette v. Milton, 129 La. 678, 56 So. 635; State v. Morgan, 142 La. 755, 77 So. 588; State v. Nunez, 147 La. 394, 85 So. 52; State v. Rini, 153 La. 57, 95 So. 400; State v. Davis, 154 La. 928, 98 So. 422; State v. Phillips, 159 La. 903, 106 So. 375; State v. Henry, 197 La. 999, 3 So.2d 104; State v. Hutton, 198 La. 174, 3 So.2d 549; and State ex rel. Martin v. Judge of Twenty-Ninth District, 152 La. 768, 94 So. 389.
 

 
 *145
 
 On the other hand, these authorities hold that the grounds of recusation of a district judge are statutory, and that where the petition or the motion for the recusation of the judge alleges facts which constitute a cause of action, the judge must refer it to another judge for trial, and where on the trial thereof, the allegations are proved by competent evidence, the judge should be recused. For instance, in the case of State v. Nunez, supra, it was alleged in the motion to recuse the district judge that the defendant, the district attorney, was a rival candidate of the judge for the judgeship and for that reason the judge was interested in the result of the prosecution of the accused; and that the judge had brought about and put in motion the prosecution to subserve that political interest and that he had acted as a detective, as a prosecuting witness, and as a prosecuting attorney. The court held that the petition disclosed a cause for recusation, the judge being interested in the case.
 

 In the case of State ex rel. Martin v. Judge of Twenty-Ninth Judicial District, 152 La. 768, 94 So. 389, the accused was charged with violating the provisions of the registration statute, Act No. 122 of the Extra Session of 1921. He filed a motion to recuse the district judge, alleging that prior to the filing of the affidavit, the judge had threatened to have him arrested and punished for not performing his duty as required by the statute; .that he requested an opinion from the attorney-general on the matter; that he conferred with the prosecuting witnesses in the cause; that he personally prepared the affidavit which formed the basis of the prosecution; and that it was sworn to before him and delivered by him to the clerk of court. The motion was overruled by the trial judge and the application for writs to this Court was granted with a rule nisi and a stay order.
 

 .Section 1 of Act No. 40 of 1880, under which the above motion to recuse was brought is identical with Article 303 of the Code of Criminal Procedure under which the demand for the recusation of the judge is made in the instant case.
 

 In reversing the judgment of the district judge and requiring him to appoint a judge of an adjoining district to determine whether or not he should be recused (State ex rel. Martin et al. v. Judge, supra, 152 La. at pages 775, 776, 94 So. at page 391), the Court said:
 

 “Under ordinary circumstances, it would not disqualify a judge if he, in a proper manner — that is, without bias, prejudice, or feeling, but solely in his capacity of a conservator of the peace — called attention of anyone to what he conceived to be a violation of law, nor that in similar impartial fashion he had sought the opinion of the Attorney General on a legal question, or that he had talked with the prosecuting witness, prepared the affidavit on information so furnished, and filed it with the clerk of court, or that he was a witness in the case, or that he had expressed an opinion that the acts complained of, if true, were a violation of law, or that he was of a different political faction. But where, as in this case, all of these conditions are charged to exist as to the same individual
 
 *146
 
 at one time, together with the allegation that he is the recognized and functioning leader of a political faction hostile to the accused, and that all of the acts and things done were in furtherance of a personal desire and scheme to gain control of the political offices in the parish for the purpose of perpetuating himself in office, and that the prosecution was instigated hy the said judge, in effect, for the purpose of intimidating the accused, another constitutional officer, into performing the duties of his office in accordance with the views and wishes of the said judge, we think a case was presented not frivolous and to be overruled without hearing, but requiring that the respondent subtnit it to some judge other than himself for determination, or that he refer the motion to recuse in similar manner for trial. * * * ”
 

 In the case In re Perez, District Attorney, 194 La. 763, 194 So. 774, 775, a proceeding was instituted by 25 citizens and taxpayers against the district attorney to have appointed an attorney to .institute a suit for his removal from office. The district attorney filed a motion to recuse the district judge on the ground that he had a personal interest in the matter because he had caused the proceedings to be instituted for the purpose of protecting his brother who was being investigated by the district attorney in connection with unlawful gambling enterprises. The trial judge held that the petition did not disclose any right or cause of action because it was merely his ministerial duty under the law to appoint an attorney to institute the impeachment .suit. The district attorney filed an application in this Court for writs, which we granted, and made returnable on a specified date, and the respondent judge filed a return opposing the relief sought by the district attorney. In annulling the judgment of the district court and ordering the trial judge to either recuse himself or to appoint another judge to determine the issues raised by the petition for the recusation, we said:
 

 “The petition of the District Attorney asking for the recusation of the district judge is not based upon the mere general allegations that the district judge was an interested party but facts are set forth tending to show the same. It is, therefore, not faulty in that respect.
 

 “In the case of State v. Nunez, 147 La. 394, 402-405, 85 So. 52, 56, we said:
 

 “ ‘In State ex rel. Tyrrell v. Judge, 33 La. Ann. 1293, it appeared that a motion was made to recuse the judge as having a personal interest in the result of the (civil) suit, and the motion was overruled. After referring to the provisions of the Code of Practice on the subject, this court said:
 

 “ ‘ “When a refusal has thus been made to the judge’s trying the cause on account of interest, that refusal
 
 must be respected by the podge.
 
 He must
 
 either admit his disqualification and enter up the order of recusation or deny it, and thereby raise an issioe touching his right to try the case. If he pursues the latter course, it is plain to see that he could not legally decide that issue himself.
 
 (Our italics.) Assuming that he is interested as charged, that would prompt him to declare himself not inter
 
 *147
 
 ested, as much as it would move him to follow that interest in the judgment that he would render in the cause.
 

 “1 “Hence it is not
 
 enough
 
 for the judge to disavow an interest, but, where such disavowal is not satisfactory to the party making the challenge, as in the present case, and he insists upon showing such interest in the judge, it evinces an unwarranted exercise of authority in this officer to assume to determine this question, so exclusively personal to himself and affecting his own competency. He should at once recuse himself on this issue and refer it to be tried in the manner pointed out by law. If on such trial the ground is shown to be untenable and the competency of the judge to try the case is decreed, then, and not till then, is the judge authorized to proceed in the case. To hold otherwise would be to render the important right of recusation or challenge nugatory and worthless.” ’
 

 “In State ex rel. Segura v. Judge, 37 La. Ann. 253, it was held:
 

 “ ‘It may well be, as the respondent claims, that the relator has no just foundation to recuse him, and that the plea has no merit; but, if such indeed be the case, it is not for him to say so.
 

 “ ‘His duty was, on the filing of the recusation, to have recused himself, to have called- in another judge to try the plea and eventually the case, and to have abstained from exercising jurisdiction over the matter pertaining to the case, until the plea had been effectually overruled.
 

 “ ‘In the case of Hunter v. Blackman, Man.Unrep.Cas. 427, our immediate predecessors said, that a recused judge is incompetent to make any order, except one of recusation. If the power exercised by the judge should be recognized, it would insure an immunity from legal pursuit. The .law, they said, never contemplated that any man, however, honorable, should be a judge in his own case.
 

 “ ‘We ourselves have already ruled clearly in this sense on this very question. State ex rel. Tyrrell v. Judge, 33 La.Ann. 1293; see, also (Southern Mut. Ins. Co. v. Pike) 34 La.Ann. (825) 828; (Nugent v. Stark) 34 La.Ann. 628; (President, etc., of Roman Catholic Church of Ascension v. Perche) 36 La.Ann. 160; Const.Art. 112; Act 1880, No. 40; C.P. 3387
 

 “In State ex rel. Martin v. Judge, 152 La. 768, 94 So. 389, we again concluded that where a charge of interest is made in a petition to recuse a judge, he should either recuse himself or refer the question to another judge, and quoted, with approval, the following language from 15 R.C.L. pages 526 and 527, paragraph 16:
 

 “ ‘Courts should scrupulously maintain the right of every litigant to an impartial and disinterested tribunal for the determination of his rights, and courts cannot too carefully guard against any attempt of an interested judge to force himself on litigating parties. It is an ancient maxim, applicable in all cases, civil or criminal, where judicial functions are to be exercised, whether in proceedings of inferior tribunals or in courts of- last resort, that no man ought to be a judge in his own cause, a maxim which appeals with such force to one’s sense
 
 *148
 
 of justice that it is said by Lord Coke to be a natural right so inflexible that an act of parliament seeking to subvert it would be declared void. * * *’ ”
 

 The pertinent part of Article 303 of the Code of Criminal Procedure, under which the recusation is sought in the instant case, reads, as follows:
 

 “The causes for which any judge in any criminal case shall be recused, shall be as follows:
 

 “First — His being interested in the cause; provided that in all causes in which the State, the parishes or political or religious corporations are interested, it shall not be sufficient cause to challenge the judge, who may have cognizance'of the case, to allege that he is a citizen or inhabitant of the State or of the Parish, or a member of said political or religious corporations, or that he pays any State, parish or city tax;
 

 * * * H= * =1:
 

 “Third — His having been employed or consulted as advocate or counsel in the cause; * *
 

 The motion for the recusation of the district judge in the instant case states that Kenneth Boagni, at the time he made the public accusations against the defendant of having illegally and dishonestly handled the parish funds, was a recognized political leader of a strong faction hostile to the defendant and the other parish officials and that the institution of the prosecution, the return of the indictment, and the filing of the bills of information were in furtherance of a scheme by Kenneth Boagni, individually and as the president of the Voluntary Guardians of Clean Government, to destroy him politically, in order that he (Boagni) could gain greater political power and secure himself in office as district judge. The evidence introduced in the trial below shows that Judge Boagni, prior to his induction into office, was recognized as a powerful political leader, and since occupying the bench he is still looked upon and considered an influential political leader in St. Landry Parish.
 

 From a careful reading and an analysis of the testimony and the documentary evidence in this case, in the light of the authorities hereinabove cited, it is clear to us that, as a citizen and as an attorney-at-law before he assumed his office as district judge, Boagni took the lead individually and as president of the Voluntary Guardians of Clean Government and did expose and reveal to the public, in speeches and pamphlets and newspaper articles throughout the Parish of St. Landry, matters that he considered violations of the criminal and civil laws of this State by certain parish officials, including the sheriff, the assessor, the secretary of the police jury, and others. As a result of his activities in calling these alleged transactions to the attention of the public and in conferring and cooperating with Seth Lewis, an attorney and a political leader, and the officials charged with the duty of instituting criminal prosecutions and enforcing the laws, they subsequently also made investigations based on the evidence furnished, all of which was presented to the Grand Jury and the district attorney and culminated in the indictments and bills
 
 *149
 
 of information filed against the accused, Savoy and Manouvrier, respectively.
 

 The district judge himself stated that he had no desire to sit in the case because it would be unpleasant and that, in not recusing himself, he was only doing what he considered his duty under his oath as a district judge. In the first case, which was the civil suit, he voluntarily recused himself, which was the proper and legal action for him to have taken, and,, as the motions for his recusation in the instant criminal cases (consolidated for trial) are identical therewith, he should have followed the same course in these cases. It was error on the part of the learned district judge who tried the motions for recusation to hold that neither the allegations of fact in the motions nor the proof in support thereof were sufficient to establish legal grounds for the recusation of Judge Boagni.
 

 The point that Boagni’s activities with reference to the defendant and his political associates took place prior to the time that he was placed in office as judge and, therefore, he should not be recused, as he has not done anything in his capacity as a judge to justify his recusation, is without merit. Article 303 of the Code of Criminal Procedure under which his recusation is requested does not make any distinction between the judge’s personal or official interest in the case, or that the interest arose prior to or after the time that he went on the bench. The issue is whether or not he has such an interest in the case as to warrant his recusation under the codal article in question.
 

 We do not think that any one could successfully contend that a person who, as an individual, as a political leader, and as an attorney-at-law, through his activities in collecting evidence and revealing facts which he considered violations of the law, and thereby brought about the indictment of the defendant, would be lacking in interest in the cause within the meaning of the law, simply because his* actions took place prior to the time he was inducted into office as judge.
 

 It is argued that the judge should not be recused because the defendant will be tried by a jury, which will determine his guilt or innocence and not by the judge. Aside from the fact that the judge plays an important part in a jury trial, it must be remembered he is the one who imposes the sentence upon the accused, after he is found guilty by the jury. Under Articles 912, 913 and 914 of the Code of Criminal Procedure, the district judge has great latitude and discretion in embezzlement cases as to the extent of the punishment, that is, the period of time the defendant, who has been found guilty by the jury, will be incarcerated in the penitentiary. The record leaves little room for doubt that, as a result of their political differences and activities, the parties herein concerned are mutually, politically, and personally hostile to each other. We do not think that the law contemplates that a judge so situated is disinterested in a case and should be permitted to preside over the trial under such circumstances and, in the event of conviction of the accused, to impose the sentence.
 

 
 *150
 
 Having concluded that Boagni’s activities as an individual, as an attorney, and as a political leader resulted in the indictment of the defendant, and that he should be recused, it is unnecessary to consider the charge that he “stacked or hand-picked” the Grand Jury, in order to secure the defendant’s indictment.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court overruling the motions for recusation is annulled and set aside;
 

 It is now ordered, adjudged and decreed that the motions for recusation are sustained and Judge Kenneth Boagni is recused from trying these cases;
 

 It is further ordered, adjudged and decreed that Honorable C. Iris Dupont, Judge of the District Court in and for the 18th Judicial District, be and he is hereby assigned to the District Court for the 27th Judicial District, Parish of St. Landry, to try the cases consolidated for trial against the accused, Daly J. Doucet, in the proceedings No. 13,572 of the criminal docket of the 27th Judicial District Court of St. Landry Parish, and to sign all necessary orders, decrees and judgments therein, and to discharge any and all other duties and functions in connection therewith; and that this assignment shall not deprive Judge Dupont of his authority to exercise his functions and discharge his duties as Judge of the District Court in and for the 18th Judicial District.
 

 ODOM, J., dissents.
 

 O’NIELL, C. J., concurs in the decree.