MILLER *v.* STATE.

(*Knoxville,* September Term, 1949.)

Opinion filed December 10, 1949.

HOBART F. ATKINS, of Knoxville, for plaintiff in error.

J. MALCOLM SHULL, Asst. Atty. Gen., for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from conviction of attempting to procure an abortion by use of instruments, Code, Section 10792, and punishment by confinement in the county work-house for 11 months and 29 days.

In substance, the assignments of error are (1) that the evidence is insufficient to support the conviction, (2) that the jury's verdict fixing punishment at less than the statutory minimum, Code, Section 10792, is a nullity, (3)

that the Trial Court erred in admitting over objection, evidence of other similar offenses by the defendant.

The pertinent evidence for the State was that on December 7, 1946, T. C. Fauls, accompanied by his wife, Edna Fauls, went to the office and hospital of Charles T. Miller in Knoxville. Miller was then a Naturopath, and apparently at that time, legally licensed to practice naturopathy. T. C. Fauls and wife were admitted to Miller's office and told him that the wife had had a female operation about five months prior to the time of this interview, and had been advised that as a result of this operation, it would be impossible for her to survive childbirth. She was pregnant at the time of this interview, and had previously consulted her family physician, who told her of her pregnancy but advised that "she should not go through a pregnancy." The family doctor, after first agreeing to perform an abortion, had later refused to do so. Fauls was advised by Miller, as he testified, that the latter's fee would be $100. Fauls then paid him $25, but there was no definite agreement as to the payment of the balance. Miller then instructed the wife to remove her underclothing and get upon the operating table. According to his own admission, Miller then used certain surgical instruments upon the female organs of Edna Fauls. Edna Fauls could not testify what was the exact nature and extent of the surgical operation then performed upon her by Miller, but did testify that he used surgical instruments upon her, and that during the operation she had heard a clicking noise. Miller then gave her certain pills and instructed her to go home and lie down, and that if she suffered further, to let him know. About midnight on the night after this operation, December 7-8, 1946, Mrs Fauls commenced a vaginal hemor-

rhage. She and her husband tried to get Miller on the telephone on several occasions. She was unsuccessful, and as the bleeding continued and her physical condition grew worse, she was taken to the Knoxville General Hospital, where she remained for seven days under treatment. The flow of blood ceased and she did not have a miscarriage, and finally gave birth to a child after a pregnancy of normal length.

There was also in evidence, the fact that on December 10 and 11, Fauls had called Miller, once at his office and once at his home, while the Attorney General and members of his staff were listening in. A stenographic transcript of these calls was made at the time. Important parts of these conversations were that after Fauls told Miller that he had tried to get in touch with him by telephone, Miller stated that he had been out of town and his car had broken down. When Fauls advised Miller that he had taken his wife to the hospital, the latter said, "That's the hell of it. You shouldn't have done that." Miller also said, "We have to be very careful about this." Fauls also advised Miller that on one occasion when he had attempted to get Miller by telephone, that the latter's wife had answered the 'phone and advised him (Fauls) that if Miller didn't come in "you'll have to get another Doctor." To this Miller said, "Hell fire, she knows better than that. You should have brought her over here." Fauls asked if he could still bring his wife to Miller's place, and the latter replied in the affirmative. Miller warned Fauls to be careful about getting his wife out of the hospital, and also said, "Don't let them know where you are going, but bring her here."

Other evidence for the State was by one Ed Mynatt, who testified that on a date after the treatment of Mrs.

Fauls, Mynatt had taken his girl friend, Mildred Braden, who was then pregnant, to Miller's office and that he (Mynatt) had gone into Miller's office and explained that the girl was pregnant and asked if Miller could do anything for her. Miller said that his fee was quite expensive and would be $100. Mynatt then paid Miller $75 and agreed to pay the balance later. The girl was then admitted to Miller's private office, and after she came out, Miller advised Mynatt that "she is all right." Testimony of Mary Braden that she had been to Miller's office when pregnant and treated there by him, was heard by the Court in the absence of the jury, and when the Trial Judge found that Miss Braden was too terrified to testify, he refused to permit her examination in front of the jury.

After the testimony of Mynatt, the Trial Judge was careful to instruct the jury that his testimony could be considered only as "it throws light, if any, on the intent, if any," of the defendant in his treatment and examination of Mary Braden, and that the jury should not consider this testimony "for a conviction in this case."

The defendant Miller admitted that Mr. and Mrs. Fauls had come to his office, and that he had made an examination of Mrs. Fauls, using a speculum and sponge forceps for the purpose. He denied that he had done anything to cause an abortion. On the contrary, he testified that he found the vaginal tissues so red, inflamed and swollen, and that there was so much discharge from the inflammation that he, being apprehensive of a miscarriage, instructed Mrs. Fauls to return home and stay in bed.

After the dismissal of the first three counts of the indictment and the State's announcement that defendant was not on trial on any one of these three counts,

the only issue before the jury was Miller's guilt under the Fourth Count, which charged him with attempting to perform an abortion by the use of instruments. Therefore, from the summary of the testimony as we have made it above, it is clear that there was no more than a simple issue of fact which imposed upon the jury the duty to determine whether or not the intent of defendant was to perform an abortion. The defendant's mere denial certainly did not create a preponderance of evidence in favor of his innocence of that intent, in view of the testimony of Mr. and Mrs. Fauls, and the attendant testimony and corroborating circumstances. We think the issue was conclusively determined against defendant's contention by the verdict of the jury. *Ferguson* v. *State*, 138 Tenn. 106, 196 S. W. 140; *Christian* v. *State*, 184 Tenn. 163, 197 S. W. 2d 797; *Turner* v. *State*, 188 Tenn. 312, 219 S. W. 2d 188. The assignments of error on the sufficiency of the evidence are, therefore, overruled.

By their verdict, the jury fixed punishment at 11 months and 29 days in the county workhouse. Code, Section 10792, fixes minimum punishment at one year in the penitentiary. On this account, defendant insists that the verdict was void. There is no merit in this assignment since the practice is expressly authorized by Code, Section 10754, which provides: "Whenever the minimum punishment is imprisonment in the penitentiary for one year, but in the opinion of the jury the offense merits a less punishment, the jury may punish by confinement in the county jail or workhouse for any period less than twelve months except as otherwise provided."

Finally, the assignment that the Trial Judge erred in admitting the testimony of Mynatt, because that testimony tended to convict the defendant of a separate and

distinct offense, is without merit since the Trial Judge carefully cautioned the jury that the testimony was to be considered only for the purpose of fixing the "intent" with which the defendant had treated Mrs. Fauls. With that limitation, the evidence was clearly competent.

"Also evidence of other crimes committed by the accused similar to that charged is relevant and admissible when it shows or tends to show a particular criminal intent, which is necessary to constitute the crime charged." *Mays* v. *State,* 145 Tenn. 118, 141, 238 S. W. 1096, 1103; *Wrather* v. *State,* 179 Tenn. 666, 675, 166 S. W. 2d 854.

Though this general rule has not been applied to a prosecution for abortion in our reported decisions, it has been frequently applied in other jurisdictions in such a prosecution to show knowledge or intent. *People* v. *Seaman,* 107 Mich. 348; 65 N. W. 203, 61 Am. St. Rep. 326; 62 L.R.A. 230. Compare: Wharton's Criminal Evidence, Vol. 1, 522; 1 Am. Jur., Abortion, Section 42. Compare: Note 39 A.L.R. p. 106.

■ Where a felonious intent is an essential element of the crime, as it is in an attempt to procure an abortion, and the accused claims that his acts were lawful and innocent, it is competent for the prosecution to rebut the testimony of the accused by evidence of other criminal acts of his where he used the same or similar means to bring about the same result. *Hightower* v. *State,* 62 Ariz. 351, 158 P. 2d 156, 158; *People* v. *Clapp,* 67 Cal. App. 2d 197, 153 P. 2d 758, 760.

The defendant relies upon the decision of this Court in *Austin* v. *State,* 137 Tenn. 474, 475, 194 S. W. 383. The facts in that case were so materially different, and the evidence preponderated so strongly against the crim-

inal intent that we think that case furnished no authority to determine issues in the present case.

All assignments of error are overruled and the judgment is affirmed.

All concur.