165 So.2d 294

**STATE of Louisiana**

**v.**

**Juliette PAILET.**

**No. 47076.**

June 8, 1964.

Hubert, Baldwin & Zibilich, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

McCALEB, Justice.

Appellant was charged, tried and convicted of violating R.S. 14:87 (performing an abortion on a pregnant female), and sentenced to serve seven years at hard labor in the State Penitentiary. During the proceedings, she reserved eight bills of exceptions on which she relies for a reversal of the conviction.

Most of the bills relate to alleged erroneous rulings of the district judge on certain motions which were presented in advance of the trial. For this reason we deem it expedient to set forth imprimis a brief statement of the trial procedure before undertaking discussion of the bills.

After the case was at issue on appellant's plea of not guilty, having previously been continued on more than one occasion, the trial was finally set for September 16, 1963. On that date, defense counsel moved for a continuance on the ground that appellant was confined to Touro Infirmary in New Orleans under treatment of a psychiatrist. The State vigorously opposed a continuance but the judge ruled that the matter would be held over until the next day so that physicians appointed by him, viz.—Dr. Nicholas Chetta, Coroner for the Parish of Orleans, and Dr. Gene Usdin,—could examine appellant in order to determine whether she was too ill to stand trial at that time. Conformably with this order, the doctors made their examination and gave expert opinions to the court on September 17th and appellant's physician also testified that she should not be required to undergo a trial at that time. Acting on the latter's opinion, the judge continued the case to November 12, 1963, being of the view that, since all the experts agreed that appellant was then suffering from a temporary mental condition known as "hysteria fugue", the ends of justice would be served by a delay to November 12th, notwithstanding the contention of the State that the trial should be set not later than the week beginning September 23rd.

The following day, the District Attorney criticized the ruling of the judge and gave a statement to the press describing it as "incredible". In addition, he filed a motion to recuse the judge but this was summarily overruled because no facts were stated to support it. Two days later, on September 20th, the State filed a motion to reset the case for trial during the week of September 23rd. This motion was in the nature of an application for a new trial of appellant's motion for a continuance. On September 23rd, the motion was heard and further evidence was adduced by both the State and appellant. After hearing the evidence and arguments, the judge granted the motion and advanced the date of trial from November 12th to September 26th.

On the day before trial, September 25th, appellant filed a motion to recuse the judge on the ground that he was interested in the cause. The motion, like the State's motion for recusation, was summarily overruled. Whereupon, appellant sought remedial writs from this Court but the application was refused. See State of Louisiana v. Mrs. Juliette Pailet, No. 46,954 of our docket.

Bills Nos. 1 and 2 relate to the action of the judge in granting the State's motion to reset the case for trial during the week of September 23, 1963.[1] Counsel for appel-

---

1. Bill No. 1 was taken to the overruling of appellant's motion to quash the State's motion to reset the case and Bill No. 2 was reserved to the ruling upholding the motion to reset.

lant, albeit acknowledging that the granting or refusing of a continuance is a matter within the sound discretion of the judge, the exercise of which will not be disturbed on appeal save in cases of arbitrary or unreasonable abuse (see Article 320 of the Code of Criminal Procedure, R.S. 15:320), assert that this case falls within the exception. Their position is that the divergent rulings of the judge—viz.: the one on September 17th granting the continuance and the revocation of this order on September 23rd—demonstrates such a vacillation in the exercise of discretion as to amount to an unreasonable abuse since the testimony given by the witnesses at both hearings was substantially the same.

■ We find no merit in the bills. In the first place, the testimony on the motion to reset is not the same as the evidence given on the original motion for continuance. On trial of the motion to reset, the State produced an additional psychiatrist who confirmed the opinion that Dr. Gene Usdin had given on the subject of "hysteria fugue" a few days before—that a person suffering from such an emotional upheaval is best able to face the unpleasant reality (standing trial) immediately after recovering therefrom and that, if too much time is allowed to elapse, resistance to the dreaded event may increase again.

■ After reading the testimony taken at both hearings, it is our impression that the judge made the better ruling on the motion to reset. In any case, it is clear that a reversal of the ruling is not indicated as appellant has made no sort of a showing that she suffered prejudice by being required to stand trial on September 26, 1963. At no time during the hearing of evidence or thereafter, in a motion for a new trial, was any complaint made that appellant was mentally confused or that her prior alleged mental illness (crying spells and depression) prevented her from intelligently conferring with her counsel during the trial or deciding whether it would or would not be to her advantage to take the witness stand in her own behalf. Compare State v. Forsyth, 229 La. 690, 86 So.2d 536.

Closely associated with the bills arising from the judge's action in advancing the trial to September 23rd on the State's motion to reset is Bill of Exceptions No. 7, which was taken to the overruling of appellant's motion to recuse the judge on the ground that he was interested in the cause.

Under Article 303 of the Code of Criminal Procedure (R.S. 15:303) this is the first cause of the five therein enumerated for the recusation of a judge and, under Article 309 (R.S. 15:309), if the judge refuses to recuse himself it becomes his duty to refer the application to another judge for trial.

■ In the case at bar, the judge overruled appellant's motion to recuse without referring it to another judge. This he had the right to do under the jurisprudence construing Article 309—provided the allegations of the petition for recusation were either mere general statements or conclusions or that the facts stated in the petition were such that, if proved, would not justify a finding that he was interested in the cause. State v. Morgan, 142 La. 755, 77 So. 588; State v. Phillips, 159 La. 903, 106 So. 375; State v. Doucet, 199 La. 276, 5 So. 2d 894 and the many authorities therein cited and State v. Laborde, 214 La. 644, 38 So.2d 371.

The motion to recuse the judge was filed on September 25, 1963—the day before the case had been reset for trial by the judge's order of September 23rd. The substance of the allegations of the motion is that, after the district attorney had publicly criticized the judge for granting appellant a continuance from September 16th to November 12, 1963, the judge became fearful of adverse publicity; that he had a private meeting with the district attorney and one or more of the latter's assistants; that the district attorney then filed a motion to reset the case for the week of September 23rd; that, as a result of these happenings, the judge, apparently fearing exposure of some relationship between himself and appellant, adopted a definite hostility towards her to such an extent that he became directly and materially interested in the outcome of the case which prompted him to grant the motion to reset the case for trial; that the judge felt that the good will of the district attorney was essential to his political career and that the maintenance of such good will was dependent upon his catering to the desires of the district attorney in the instant case.

In his per curiam to the bill taken to the overruling of the motion for recusation, the judge states that he considered the motion frivolous and that it was obviously filed for the purpose of obtaining a continuance on the day before the morning of the trial when all witnesses had been summoned and both sides, as well as the jury panel, " * * * were ready to proceed to trial." He was further of the opinion that the motion contained merely the conclusions of the pleader and no facts were alleged which would lead to the conclusion that it was to the judge's personal advantage to seek to bring about a decision in favor of the State.

■ We agree. The above cited jurisprudence points out that even allegations tending to show bias or prejudice are not sufficient to sustain a charge that the judge has an interest in the cause since bias is neither the equivalent of interest nor is it a ground for recusation under the statute. State v. Laborde, supra. In State v. Phillips, supra, the Court said: "For a judge to

have an interest in a case within the meaning of the law, * * * some fact must exist that leads to the conclusion that it is to the judge's personal advantage, whether he would be influenced by such advantage or not, to decide the case or to seek to bring about a decision therein, for or against one of the parties to it, without reference to the law and the evidence."

When we consider the circumstances under which the motion to recuse the judge was taken we regard the motion as purely a last minute effort on the part of appellant to delay her trial. The allegations in the motion to recuse, i. e., that appellant believed that the judge and the district attorney had a private meeting; that the judge feared exposure of some personal relationship between appellant and himself,[2] and that his action with regard to the motion to reset was dictated by his feeling that the good will of the district attorney was essential to his political career, are not essentially statements of fact (save the averment that the judge had a private meeting with the district attorney which, standing alone, is a matter of no consequence) but, rather, are conclusions drawn by the pleader based upon nebulous suspicions as to the motive of the judge in changing his view with respect to the previously granted continuance. We hold that they are insufficient to show that the judge had an interest in the cause within the meaning of R.S. 15:303. Indeed, this type of speculative allegation respecting political fear and favor could, we daresay, be employed in every case as a weapon by any party dissatisfied with an adverse ruling of a judge.

Bills of Exceptions Nos. 3 and 4 relate substantially to the same issue—wire tapping, and may be considered together.

The record shows that, in April, 1962, the New Orleans Police began a surveillance of the residence of appellant at 2909 St. Claude Avenue which continued for the next six months until appellant was arrested in her home on October 5, 1962. During this time, the police saw 20 to 25 different women enter appellant's residence on various occasions, each remaining therein for approximately an hour. On September 19, 1962, a wire tap was installed on a wire terminal which led to appellant's telephone, the apparatus being connected to a Sound Scriber recording device, so that all telephone calls were automatically recorded and later replayed to listening officers on a daily basis.

2. In connection with the motion to recuse, appellant filed in evidence a cancelled check, payable to the judge and by him endorsed, dated July 13, 1960, representing a contribution by her husband to the judge during the latter's campaign for the office he now holds. It may be that appellant felt that this campaign contribution might entitle her to special consideration. At any rate, she was evidently satisfied that she was receiving fair treatment in his court during a period of almost nine months and until the judge granted the State's motion to reset her case for trial.

The wire tap was continued until October 10, 1962 or five days after appellant's arrest. No one knew of this wire tap except two police officers and an assistant district attorney. These police officers were not the same officers as those who were engaged in obtaining evidence against appellant in her abortion practices. The purpose of the wire tap was to secure evidence in connection with an entirely different matter, i. e., a suspected collusion between appellant and one or more members of the police force.

On the day of appellant's arrest, a warrant was issued for the search of her residence and, in execution thereof, certain articles pertaining to her abortion business were seized.

After the filing of a Bill of Information charging the offense in this case, but before her arraignment, appellant filed a motion to suppress the evidence obtained by the State under the search warrant, and also all evidence secured through wire tapping, claiming that said search and wire tapping were violative of her rights under the Constitution of the United States and of this State and that the wire tap was in violation of an Act of Congress (47 U.S.C. 605). Following a hearing, the motion to suppress was overruled and Bill of Exceptions No. 3 was reserved.

It is conceded by appellant that the articles taken from her residence under the search warrant were not offered in evidence by the State at the trial of the case. Hence, the question raised by Bill No. 3 involves only the issue of wire tapping. And, in view of the fact that the State is contending that it proved that none of the evidence used at the trial was the product or fruit of the wiretap information, actually the only question presented for our consideration is whether appellant was entitled to have oyer of the wire-tap recordings so that she could use the information derived therefrom as a means of ascertaining whether the officers appearing as State witnesses were testifying truthfully when they stated that the evidence they secured against her emanated entirely from sources disassociated with the wire tapping.[3] Bill No. 4

3. Counsel for the State and counsel for appellant have fully briefed the issue of the admissibility of evidence secured by wire tapping. The Supreme Court of the United States ruled in Olmstead v. United States (1928) 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, that wire-tapping is not a search and seizure within the meaning of the Fourth Amendment and, therefore, evidence procured thereby was admissible in Federal courts. However, following the enactment by Congress in 1934 of the Federal Communications Act, which prohibited wire-tapping (see 47 U.S.C. 605) the Court, in Nardone v. United States (1937) 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, held that Section 605 banned the use of wire-tap evidence in criminal trials in Federal Courts. Later, in the second Nardone case (1939), see 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, the Court extended its holding to render inadmissible not only evidence of conversations by telephone obtained through

was taken to the overruling of appellant's motion for oyer.

▬▬▬ In requesting a pre-trial examination of the wire-tap recordings, defense counsel find themselves confronted with the well-established rule that all evidence relating to a pending criminal case which is in possession of the State is privileged and not subject to inspection by the accused unless and until it is offered in evidence at the trial. The single exception to this rule has been made in instances where the State has in its possession a written confession of the accused. State v. Dorsey, 207 La. 928, 22 So.2d 273. Since the Dorsey case, defense counsel have urged this Court on numerous occasions to broaden the scope of our holding therein but such requests have been steadfastly refused. See State v. Mattió, 212 La. 284, 31 So.2d 801 (police report); State v. Vallery, 214 La. 495, 38 So.2d 148 (statement of prosecuting witness); State v. Simpson, 216 La. 212, 43 So.2d 585 (evidence produced at grand jury hearing); State v. Lea, 228 La. 724, 84 So.2d 169 (oral confession) and State v. Bickham, 239 La. 1094, 121 So.2d 207 (verbal statements).

We hold, therefore, that Bills Nos. 3 and 4 are without merit.

During the trial of the case, while the young man who caused the pregnancy of the victim of the abortion was testifying, he was questioned by defense counsel as to whether the victim had attempted to have an abortion performed before she contacted appellant. The witness answered in the

wire tapping but also evidence procured or made accessible by the use of the information derived by such wire tapping, i. e., the fruit of the poison tree doctrine. Nevertheless, in 1952 the Court held in Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231, that 47 U.S.C. 605 applied only to exclusion of wire-tap evidence in Federal Court proceedings and that Congress did not intend that the proscription of the statute should extend to State court proceedings.

Since the Louisiana statute, R.S. 14:322, exempts police wire tapping for the detection of crime from the general prohibition against wire tapping the State here contends that wire-tap evidence is receivable under our law and further that, inasmuch as such evidence is not violative of the Fourth Amendment to the Federal Constitution, the decision of the Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081

(1961) produced no effect anent the admissibility in State Courts of evidence secured by wire tapping.

Counsel for appellant concede the validity of the State's position on this point but they say that Louisiana should apply its own constitutional provision (prohibition against unreasonable searches and seizures, Section 7 of Article 1) with respect to wire-tapping evidence and that, in any event, our State courts should not accept evidence thus procured because the witness who secures such evidence must necessarily acknowledge in open court that it was obtained through violation of a Federal law.

As indicated above, it would be superfluous for us to rule on the admissibility of wire-tapping evidence in this case, since the record shows that no such evidence was introduced by the State at the trial. Hence, any opinion expressed would be purely advisory.

affirmative and, in response to further questioning, gave the name of the person who tried to do it. On redirect examination the district attorney asked the witness how he obtained this information and he answered that it had come from the victim herself. Later, the district attorney recalled the witness to the stand and asked him how long before coming to New Orleans he had been told of the two abortion attempts. The witness answered that it was a couple of weeks. Defense counsel then objected on the ground that this was hearsay evidence. When the objection was overruled, Bill No. 5 was taken.

■ Defense counsel have submitted this bill without argument; properly so, we think, for the complaint lacks substance. The district attorney was entitled to re-examine the witness on prior abortion attempts—an issue which had been interjected in the case by the defense. Moreover, we doubt that the evidence was hearsay but, even if it were, the error in allowing it would not justify a reversal of the conviction for we think it manifest that appellant suffered no prejudice as a result. See R.S. 15:557.

Bill of Exceptions No. 6 was reserved when the judge, over objection of appellant, permitted the State to introduce evidence of abortions committed by appellant on five other women on different occasions within a few months of the date on which the abortion was performed in this case.

In arguing that it was reversible error for the judge to permit the State to prove these separate and independent offenses, wholly disconnected with the crime for which appellant was being tried, defense counsel contend, in substance, that this procedure deprived appellant, for all practical purposes, of her right to plead double jeopardy, of the right to be informed of the charges brought against her and that Articles 445 and 446 of the Code of Criminal Procedure are inapplicable to the case because it was wholly unnecessary for the State to prove these offenses in order to establish appellant's intent to commit the crime for which she was standing trial.

■ We do not believe that counsel's contention is tenable in view of the attendant facts and circumstances of the case. It is, of course, fundamental that in criminal prosecutions the State must stand or fall upon the facts surrounding the particular case under investigation. However, an exception to this rule is recognized under R.S. 15:445 and 446 which provide that, in order to show intent, evidence of similar acts independent of the act charged in the indictment is admissible and also that, when knowledge or intent forms an essential part of the inquiry, testimony may be offered of the commission of similar offenses by the accused for the purpose of showing his guilty knowledge and intent.

Abortion is defined by Article 87 of the Criminal Code (R.S. 14:87) to be the per-

formance of certain described acts " * * * for the purpose of procuring premature delivery of the embryo or fetus: * * *". Thus, since the crime is only committed when there is a purpose to procure premature delivery, intent is an essential ingredient of the offense. This being so, the evidence of other abortions performed by appellant was clearly admissible under the specific provisions of R.S. 15:445 and 446. Such evidence was especially relevant under the facts of this case—for we understand that defense counsel informed the jury in his opening statement that appellant is a midwife and that the victim came to appellant's house on October 5, 1962 for a routine prenatal examination with the catheter and packing already in her body. Indeed, the record shows that one of the arresting officers was questioned at length by defense counsel concerning whether he had been informed prior to the arrest that appellant was a registered midwife.

■ That evidence of similar offenses may always be offered, when the defense is lack of criminal intent in the commission of the crime charged, is well settled in this State. See, among other authorities, State v. Rives, 193 La. 186, 190 So. 374; State v. Johnson, 228 La. 317, 82 So.2d 24 (on rehearing); State v. Wagner, 229 La. 223, 85 So.2d 272; State v. Blankenship, 231 La. 993, 93 So.2d 533 and State v. Allen, 243 La. 698, 146 So.2d 407.

While there are no Louisiana cases relative to the admissibility of proof of similar acts by an accused on trial for abortion, the text writers declare, and the courts of other jurisdictions have held, that such evidence is receivable to prove the criminal intent of the person on trial. See Wharton's Criminal Evidence, Vol. I, (12th Ed. 1955), Sec. 237, p. 524, Sec. 242, pp. 557, 559; Underhill, Criminal Evidence, Vol. III, (5th Ed. 1957), Sec. 677, pp. 1616, 1617; 2 Wigmore on Evidence, Third Edition, Sec. 359; 1 C.J.S. Abortion § 28, p. 336; 1 Am.Jur., Abortion, Sec. 42, p. 148; Parnell v. State, 166 Tex.Cr.R. 239, 312 S.W.2d 506; People v. Heidman, 11 Ill.2d 501, 144 N.E.2d 580; State v. Sturchio, 130 N.J.L. 259, 32 A.2d 577; State v. Durkee, 68 R.I. 73, 26 A.2d 604; Smith v. State, 83 Okl.Cr. 209, 175 P.2d 348; Hightower v. State, 62 Ariz. 351, 158 P.2d 156; Max v. People, 78 Colo. 178, 240 P. 697; People v. Mitchell, 368 Ill. 399, 14 N.E.2d 216; State v. Steadman, 216 S.C. 579, 59 S.E.2d 168; Miller v. State, 189 Tenn. 281, 225 S.W.2d 62, 15 A.L.R.2d 1076, 1083.

Bill No. 8 was taken to the overruling of a motion for a new trial. It presents nothing more to review as the motion merely incorporates all of the errors complained of in the first seven bills which we have already discussed.

The conviction and sentence are affirmed.