186 So.2d 576

**STATE of Louisiana**

v.

**Hezekiah BROWN.**

No. 48053.

May 2, 1966.

Rehearing Denied June 6, 1966.

237

238

Earl J. Amedee, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant, Hezekiah Brown, having been sentenced to death on his conviction on an indictment charging him with the crime of aggravated rape [1] of Gloria Summers on October 16, 1964, in the Parish of Orleans, prosecutes this appeal, relying on several errors allegedly committed during the course of the trial to which bills of exception were timely reserved and perfected.

Before trial the accused filed a Motion to Quash the Indictment and to Set Aside the Jury Commission, the Venire and the Grand Jury on the ground that in Orleans Parish Negroes are discriminated

1. Aggravated rape is a crime denounced by R.S. 14:42 which provides:

"Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:

"(1) Where the female resists the act to the utmost, but her resistance is overcome by force.

"(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

"(3) Where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense.

"Whoever commits the crime of aggravated rape shall be punished by death."

against in the selection of juries. By stipulation between counsel for the defendant and for the State, the Motion was submitted to the trial judge on the testimony taken on similar motions filed in State v. Barksdale, 247 La. 198, 170 So.2d 374. The exception to the overruling of the Motion is without merit as the decision of the Barksdale case was adverse to the defendant's contentions, and while at the time of his trial the case was pending on an application for a writ of certiorari before the Supreme Court of the United States, the writ has since been denied. See, Barksdale v. Louisiana, 382 U.S. 921, 86 S.Ct. 297, 15 L.Ed.2d 236.

■ At the time of filing the Motion to Quash, defense counsel also filed a Prayer for Oyer in which he asked for copies of all confessions, written or oral, admissions and statements of the accused in the files of the prosecution, and of the proces verbal of the Orleans Parish coroner showing the results of all examinations and tests made upon the defendant Brown and the prosecuting witness Gloria Summers. The State, through the prosecuting attorney, answered it did not have any written confessions or statements made by the defendant and denied the other demands. Another bill was reserved when the judge ruled the answer was "good and sufficient," stating that according to the jurisprudence of this State [2], the defendant was not entitled to oral confessions, admissions or statements made by him [3] or other evidence in the possession of the District Attorney. As to the demand for a copy of the coroner's proces verbal, the trial judge in his per curiam stated that during the trial the defense attorney was given an opportunity to review the coroner's report of all the tests and examinations made on the victim and the defendant and at that time made no complaint or showing "that his failure to have these documents in advance of trial deprived him of any information necessary to his defense, nor did he request any subpoenaes for any other documents at that time or for any experts to testify with reference to these documents." Counsel for the defense obviously realized this bill is totally lacking in merit as he has neither briefed it nor mentioned it in oral argument.

■ The next bill was reserved when the trial judge overruled defense counsel's objection to the District Attorney's statement to jurors on voir dire examination, "If you find the defendant guilty of aggravated rape, you find him guilty, but you as Jurors, set the sentence, whether it be the death pen-

---

2. State v. Dorsey, 207 La. 928, 22 So.2d 273; State v. Pailet, 246 La. 483, 165 So.2d 294; State v. Bickham, 239 La. 1094, 121 So.2d 207; State v. Lea, 228 La. 724, 84 So.2d 169; State v. Shourds, 224 La. 955, 71 So.2d 340; State v. Haddad, 221 La. 337, 59 So.2d 411; State v. Martinez, 220 La. 899, 57 So.2d 888; State v. Simpson, 216 La. 212, 43 So.2d 585.

3. The defendant had made no oral confessions, admissions or statements, in fact, when interrogated by the arresting officers, he denied he was the guilty party.

alty or guilty without capital punishment", claiming that according to the statement, "the Jury must return either a verdict of guilty as charged, or guilty without capital punishment."

This bill lacks substance. The note of evidence attached thereto clearly demonstrates, as stated by the trial judge in his per curiam, "All that the District Attorney was trying to tell the jury was that if the jury found the defendant guilty of aggravated rape, it was up to them to determine whether the punishment would be the death penalty, or life imprisonment." Furthermore, the judge related that counsel for the defendant informed the jurors of the other responsive verdicts and that he, in his written charge at the conclusion of the trial, gave instructions to them of all responsive verdicts that could be returned.

The next three bills of exception were reserved when the trial judge permitted the introduction into evidence, over objection by defense counsel, a handkerchief (No. 4) of the victim found on the person of the defendant shortly after his arrest, a pair of pants (No. 5) and blue undershorts, a green pull-over shirt and white undershirt (No. 6), the defendant alleging their admission into evidence was prejudicial to him as none of these articles had been properly identified; and besides, he did not voluntarily agree to take off his clothes.

The trial judge in his per curiam to bill No. 4 stated the testimony of the complaining witness in identifying the handkerchief as hers was clear as she recognized it both by sight and perfume as being the one taken from her by the defendant on the day of the attack and Officer Douglas Foster, one of the arresting policemen,[4] identified the handkerchief as being the one found in the defendant's pocket.

Bills of exception Nos. 5 and 6 are equally without merit. According to the record, at the trial Officer Foster properly identified the clothes as being those taken from the accused following his arrest; they were also identified by the victim as being similar to those worn by the defendant at the time of the attack.

The last bill was reserved to the trial judge's denial of defendant's Motion for a New Trial, based on the alleged errors complained of in the foregoing bills of exception, and therefore presents nothing for our review.

Defense counsel, in arguing bills of exception Nos. 4, 5, and 6 before this court, endeavors to extend their scope and for the first time maintains the aforementioned exhibits were inadmissible into evidence as they had been secured by an illegal search and seizure, thus in contraven-

---

4. The other arresting officer did not appear as he had been injured in an automobile collision.

tion of rights guaranteed by the Fourth [5] and Fourteenth Amendments to the Constitution of the United States; and furthermore, they had been obtained in such a manner and under such circumstances as to violate the defendant's right to counsel provided by the Sixth [6] and Fourteenth Amendments.

A perusal of the testimony adduced at the time of the trial, which is attached to the bills of exception and to the Motion for New Trial, reveals there is no merit to these belated contentions and a review of the cases relied upon by counsel readily discloses they are factually inapposite and can have no application to the case at bar.

According to the uncontradicted testimony of Gloria Summers, a twenty-two year old Negro, she was on her way to Charity Hospital to keep a clinic appointment about 10:45 a. m. on October 16, 1964, and as she neared the Hospital, walking on Gravier Street, was accosted by a Negro man unknown to her, who at knife point forced her to enter a taxicab parked nearby, instructing the driver to take them to Howard Avenue. After they left the cab she was forced by her abductor to accompany him through an alley to a room in a condemned house located at 943 Howard Avenue, where despite her cries and pleas and unsuccessful efforts to escape, she was, after repeated threats and blows, ravished by the defendant. She was subjected to repeated assaults before she managed to get away at approximately 3:45 p. m., fleeing to a nearby Negro restaurant where she told one of the employees [7] that she had been raped by a man she did not know, and called the police.

Upon their arrival, Officers Ruth and Armbruster were promptly informed of what had transpired, and accompanied by the victim, made a futile search for the assailant in the neighborhood. Two days later, Officers Foster and Brister, who had been assigned to further investigate the case, went to the house where the al-

5. Amendment IV of the Constitution of the United States provides:

   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

6. Amendment VI of the same Constitution states:

   "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

7. Her testimony is fully corroborated by William Turner, an employee of Portia's Chicken Shack, who stated the victim was "nervous and had been crying," and told him she did not have a nickel to call the police.

leged crime had been committed, finding there the defendant, a Negro man about fifty-six years of age, and a Negro woman in the process of dressing. The officers, while questioning Brown as to his activities in that particular location, noticed he fitted the description the victim had given of her assailant and so informed him. Whereupon he stated, "he hadn't raped anybody, he would like to be taken before the person to be cleared." Not being able to satisfactorily account for his whereabouts at 10:45 a. m. and several hours thereafter on October 16th, he was taken to the residence of the victim, who upon being asked if she recognized this man as the rapist, answered, "It looks like the man." She was then asked by the officers, "Can you be sure?", to which she replied, "Well, the man who raped me had a scar on his left ankle and a scar on his left chest and a scar on his back." At that point Foster *"asked* Brown to take off his left shoe and sock and lift up his shirt" and found the scars as described by the prosecuting witness. He was then placed under arrest and taken to the First District Precinct where the aforementioned exhibits were removed, labelled and sent to the crime laboratory, all of which were properly identified at the trial by Officer Foster as those taken from Brown following his arrest. (Emphasis ours)

According to the minute entries, on December 3, 1964, Brown was indicted for aggravated rape by the Grand Jury for Orleans Parish and on December 15, 1964, accompanied by qualified counsel obviously appointed by the court to appear with him at arraignment, pleaded not guilty. To assist in his defense, the court appointed Earl J. Amedee, an attorney of his own race, who has had wide experience in the practice of criminal law for the last sixteen years, having served as both an assistant prosecuting attorney and a defense attorney in the Parish of Orleans. While the minutes do not disclose when and on what date the case was fixed for trial, they do reveal the Motion to Quash and Prayer for Oyer forming the bases of bills of exception Nos. 1 and 2, were filed on April 9, 1965, and disposed of April 12th, the trial beginning on April 13th. During the entire proceedings, the defendant urged no objections or infirmities other than the abovementioned Motion and Prayer and the several alleged errors which formed the bases of bills of exception Nos. 3-6. When the State rested its case, counsel for the defendant asked for a recess and after consultation with his client, submitted the case on the record as made up. The jury returned a verdict of guilty as charged after having heard argument by counsel representing the State and the defendant and received the instructions and charges by the trial judge.

For the reasons assigned, the conviction and sentence are affirmed.